CASE 36—PETITION ORDINARY—APRIL 10.

# Moreland's Assignee v. Citizens' Savings Bank.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. NEGOTIABLE INSTRUMENTS—ACCOMMODATION PAPER—MISAPPLI-
CATION OF PROCEEDS.—If a note be made for general accommo-
dation without restriction as to its use, the party accommo-
dated has the right to sell it and receive the proceeds, and the
fact that he fails to appropriate the proceeds according to a
prior agreement constitutes no defense for the accommodation
maker.

Where the cashier of a bank who acted for the bank in dis-
counting an accommodation note induced the payee to apply the
proceeds to the payment of certain insurance premiums in which
he, the cashier, as agent of an insurance company, had an in-
terest, which he knew to be a different purpose from that con-
templated by the accommodation maker, these facts constitute
no defense to the note in the hands of the bank, as the cashier's
agency for the bank ceased when the bill was purchased, and
the bank is not bound by his acts with reference to the proceeds.

2. NOTICE OF PROTEST.—As the petition alleges that Owensboro,
Ky., was the postoffice address of the maker, that he did not re-
side in Owensboro, Ky., when the bill was protested, and that the
notice of protest was by the notary addressed and mailed to him
at Owensboro, Ky., and that he received it, and these allegations
are not denied, there can be no doubt as to the sufficiency of the
notice.

3. AUTHORITY OF NOTARY PUBLIC.—The fact that a notary is the
cashier of and a stockholder in a bank does not prevent him
from protesting a bill held by the bank.

C. S. WALKER FOR APPELLANTS.

1. The answer presents a good defense. A diversion of accommoda-
tion paper from the special purpose for which it was executed
will release the accommodation drawer, and one who takes the
paper with knowledge of the diversion is not a bona fide holder.
(1 Daniel on Negotiable Instruments (3d ed.), secs. 177, 789, 776a,
770, 790, 791, 792; Thompson v. Poston, 1 Duv., 392; 2 Am. &

Eng. Enc. of Law, p. 395, note; *Idem*, p. 394; Russell v. Ballard, 16 B. M., 205; Brandt on Suretyship and Guaranty, vol. 2 (2d ed.), sec. 397; *Idem*, vol. 1, sec. 115; *Idem*, vol. 2, p. 578, note 2.)

2. The notary public who pretends to have protested the bill for non-payment, and to have given notice thereof to the drawer, was at the time the cashier of and a stockholder in the appellee bank and hence such protest and notice were invalid and nugatory. (Acts 1883-4, vol. 2, sec. 4, p. 1191; Todd v. Edwards & Co., 7 Bush, 93, 94; Gen. Stats., ch. 79, sec. 5; Mulholland & Bro.'s v. Samuels, 8 Bush, 65; Giauque's Notary's and Conveyancer's Manual, 2; 16 Am. & Eng. Enc. of Law, pp. 774, 775 and notes.)

ROBERT S. TODD AND REUBEN A. MILLER FOR APPELLEE:

1. The knowledge of Moore as agent of the insurance company was not the knowledge of the bank and notice to him was not notice to the bank. (Waynesville Natl. Bank v. Irons, 8 Fed. Rep., 1, 9; First Natl. Bank v. Christopher, 40 N. J. Law, 435; Barnes v. Trenton Gas Light Co. 27 N. J. Eq., 33; Lyne v. Bank of Ky., 5 J. J., Mar., 545; First Natl. Bank v. Loyhed, 28 Minn., 396; West Boston Savings Bank v. Thompson, 124 Mass., 506; First Natl. Bank v. Gifford, 47 Iowa, 575.)

2. As the notary himself, although the cashier of and a stockholder in the bank, would be a competent witness under our law to testify concerning the protest and the notice of dishonor, his certificate is likewise competent under our statute to prove these facts.

The cases of Herkimer Co. Bank v. Cox, 21 Wend., 119, and Bank v. Porter, 2 Watts, 141 (cited in 16 Am. & Eng. Enc. of Law, p. 775), distinguished.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

This action is upon a bill of exchange for $2,900, dated March 24, 1892, drawn by J. P. Moreland, accepted by T. V. Valden, and endorsed by J. A. Fuqua, made payable at appellee Citizens Savings Bank six months after date.

J. P. Moreland having made an assignment, the appellant Taylor, his assignee, resisted a recovery on the bill of exchange claiming (1) that it was drawn for accommodation and the proceeds were fraudulently diverted; (2)

that the notary public was the cashier of and a stockholder in the appellee bank, therefore he had no legal right to protest or give notice thereof. It is claimed that no notice of protest was given as required by law.

The appellant filed an answer and an amended answer, to which the court sustained a demurrer. Failing to plead further, judgment was rendered against appellant for the amount of the bill of exchange and interest. From that action of the court this appeal is prosecuted.

In considering the question the material allegations of appellant's pleadings will be taken as true. It is alleged in the original answer that W. H. Moore was cashier of, and a stockholder in, the appellee bank when the bill was made, as well as being the agent of life insurance companies and sharing largely in the premiums paid such companies; that Walden was a borrower of money from appellee; that he was under the influence and domination of Moore; that Moore procured him to discount paper with the proceeds of which he purchased $105,000 life insurance; that Moore got one-fourth of the premiums paid; that Walden was insolvent; that the bill in suit was discounted to enable Walden to pay premiums on life policies, Moore getting one-fourth thereof; that no money was advanced to Walden on the bill, but Moore appropriated it to pay the premiums.

It is further alleged that Moreland "signed the bill in suit believing the said Walden would use it in renewal of bills he, the said Moreland, was already bound for, or *that the money would be paid to said Walden.*"

It appears that Moore occupied a dual position in the transaction. In the purchase of the bill of exchange he represented the appellee; in inducing Walden to procure policies in life insurance companies he represented such companies.

It is not alleged that the appellee obtained any benefit from the discount of the bill of exchange other than that which would ordinarily flow from such a transaction, or that the money which it paid for did not go where Walden desired it, or that the bank retained a cent of the proceeds of it, or had any interest in an improper diversion of the proceeds.

The allegation is that Moreland signed the bill believing that it would be used in renewal of bills for which he was already bound, or *"that the money would be paid to said Walden."* From this allegation we must conclude that Walden had the authority from the drawee to sell the bill and get the money for which it would sell. This placed no restriction or limitation upon Walden's right to dispose of the bill when and where he pleased, or to receive its proceeds. It follows that Walden had the right to sell the bill to the appellee, and receive its proceeds.

It may be said that the facts alleged in the amended answer as to the purpose for which the bill was drawn restrict the right of Walden in the disposition of the bill.

In the amended answer it is alleged "that at the time and for many years previous to the making of the paper in suit, his co-defendant, Walden, was engaged in business, necessitating the borrowing of money for use therein, and did borrow largely from plaintiff and other banks for this purpose, defendant Moreland indorsing his mercantile paper.

"He says that the paper in suit was made for this and no other purpose, and by agreement between said Moreland and said Walden that it was to be discounted and used thus and not otherwise.

The office of an amended pleading is not to contradict or to make statements inconsistent with those contained

in the pleadings sought to be amended. The facts alleged are not inconsistent with the idea that Walden had the right to sell the bill and receive the proceeds.

The allegations of the amended answer as to the business in which Walden was engaged, which necessitated the borrowing large sums of money, and the purpose for which the bill in suit was made, are vague and indefinite.

It is true that it is alleged that Moreland indorsed Walden's mercantile paper, but in stating the purpose for which the bill was made it is impossible to tell from the language used the character of business in which the proceeds were to be used.

As pleadings should be strongly construed against the pleader we conclude that Walden had the right to sell the bill and accommodate himself in the disposition of the proceeds.

Moore represented the bank in buying the bill of exchange, but when he, as the agent of insurance companies, obtained Walden's consent to, or did for Walden, apply the proceeds of the bill in paying premiums on policies of life insurance, then he was not acting for the appellee and it should not be held to be bound by his acts. He was not employed by the appellee to solicit for life insurance companies or to transact business for such companies. The appellee did not participate in his profits in the life insurance business, nor was it in any way associated with him in such transactions. His agency for the bank ceased when the bill of exchange was purchased. There was no restriction as to the use of the bill, as Walden had the right to sell it and receive the proceeds.

"If the note be made for general accommodation without restriction as to its use, the party accommodated may use it in any way beneficial to himself, provided such use be

legal, and it will not matter that he fails to apply the proceeds according to a prior agreement, for otherwise there could be no recovery on accommodation paper." (Daniel on Negotiable Instruments, sec. 793.) This doctrine is announced in Brooks v. Hey, 23 Hun., 374, wherein the court said "the failure on the part of a payee of an accommodation note to appropriate the proceeds according to a prior agreement, is no defense for the accommodation maker, otherwise there could be no recovery on an accommodation note. When there is no restriction as to the use which the payee shall make of the note, it is sufficient if he receives a full and legal consideration for it when he transfers it."

In Dunn v. Weston, 71 Me., 270, the same principle is approved.

Black, C. J., in Lord v. The Ocean Bank, 20 Pa. St., 384, says: "But the maker of an accommodation note can not set up the want of consideration as a defense against it in the hands of a third person, though it be there as collateral surety merely. He who chooses to put himself in the front of a negotiable instrument for the benefit of his friend must abide the consequences (Walker v. Bank, 12 Serg. & R., 382), and has no more right to complain if his friend accommodates himself by pledging it for an old debt than if he had used it in any other way. This was decided (Appleton v. Donaldson, 3 Pa. St., 381), in a case strongly resembling the present one. *Accommodation paper is a loan of the maker's credit* without restriction as to the manner of its use."

Whenever a bill of exchange is made for accommodation, and the purpose was to raise money by its sale, the one who buys and pays for it can not be held to look to the application of its proceeds. In such case there can not be

said to be a diversion of the bill though the proceeds may not have been used as the accommodated party agreed with the maker that it should be.

The remaining questions to be considered are as to the authority of the notary to protest the bill, and as to the sufficiency of the notice of protest.

As to the latter there can be no doubt. It is alleged in the petition that Owensboro, Ky., was and is the postoffice address of Moreland; that he did not reside in Owensboro, Ky., when the bill was protested; that the notice of protest was addressed and mailed to him at Owensboro, Ky., and that he received it.

These allegations of the petition are not denied.

It is insisted that the notary being cashier of, and a stockholder in, the bank could not legally protest the bill. To sustain this contention the cases of Herkimer Co. Bank v. Cox, 21 Wend., 119, and Bank v. Porter, 2 Watts (Pa.) 141 are cited. In these cases the court proceeded upon the idea that as the notary was incompetent as a witness by reason of his interest, under the law of New York and Pennsylvania, therefore his certificate should not be competent to prove demand and notice. If the reasoning of the court in these cases was then good it would not now be in this case because the fact that the notary had an interest in the bank does not render him incompetent as a witness against the parties to the bill in suit. Our statute declares him to be a competent witness.

Judgment affirmed.