## Sousley, et al. v. Citizens Bank of Nepton.

(Decided January 27, 1916.)

### Appeal from Fleming Circuit Court.

1. Homestead—Mortgage of—Validity—Equitable Lien.—A mortgage of a homestead, unless acknowledged by both the husband and wife and recorded or lodged for record, is ineffectual to convey the homestead of either; and where the mortgage is invalid because not properly acknowledged, the mortgagee is not entitled to an equitable lien on the property.

2. Acknowledgment—Notary Public—Effect of Interest in Transaction.—An acknowledgment of a mortgage to a bank is not invalid because made before a notary public who was the cashier of and a stockholder in the bank.

3. Acknowledgment—Officers—De Facto Officer—Notary Public.—Acknowledgment After Term Expires.—Where the parties act in good faith, the acknowledgment of a mortgage before a notary public whose term of office had expired, but who continued in good faith to hold himself out as such and execute the duties of the office, is valid.

PAUL HEFLIN for appellants.

C. B. MORFORD and R. J. BABBITT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On November 7, 1910, appellants, O. B. Sousley and wife, executed and delivered to the Citizens Bank of Nepton their joint promissory note for $800.00. To secure the payment of the note they executed, acknowledged and delivered to the bank a mortgage on a small tract of land, on which were located a residence and storehouse. The note not having been paid at maturity, the bank brought this action to recover thereon and enforce its mortgage lien. The Sousleys defended on the ground that the mortgage was invalid, and, therefore,

insufficient to pass their homestead, which they asserted in the property.   They attacked the mortgage on the ground that their acknowledgment was taken before a notary who was also the cashier of and a stockholder in the bank, and on the further ground that his term of office had expired and his acts thereunder were null and void.   In its reply the bank relied on the following facts: R. G. Wilmott, who took the acknowledgment, was on August 10, 1907, duly appointed and commissioned by the Governor of Kentucky a notary public in. and for Fleming county, Kentucky.   Thereupon he filed his commission with the county clerk of Fleming county, gave bond and took the oath required by law.   Both he and the county clerk believed in good faith that his term of office did not expire until August 10, 1911.   The order and bond provided that his commission expired August 10, 1911.   The said R. G. Wilmott, believing in good faith that his term of office did not expire until August 10, 1911, took many acknowledgments, about 150 to different instruments between the spring of 1908 and August 10, 1911, when the mortgage in question was acknowledged.   During this time he continued to act as notary public in good faith, believing himself to be legally qualified to do so under his commission.   The public generally recognized him as a notary and called on him for his services and accepted said services.   When the acknowledgment was taken both the bank and the Sousleys recognized him as a notary public and engaged his services to take the acknowledgment.   At the time the acknowledgment was taken Wilmott was a notary public *de facto* and the acknowledgment was valid and binding on the parties.   By another paragraph the bank pleaded in substance that, even if the mortgage was invalid, the circumstances of the transaction were such as to create a valid equitable lien as between the parties. To the plea that Wilmott was a *de facto* notary and his acts were valid, the chancellor sustained a demurrer. However, on final hearing he adjudged the bank an equitable lien, which he directed to be enforced by a sale of the property.   From that judgment this appeal is prosecuted.

In adjudging the bank an equitable lien on the property in question the chancellor proceeded on the theory that the doctrine applicable to executory contracts for the sale of land applied.   With this contention

we cannot agree. The distinction between the two cases grows out of the fact that the statutes are entirely different. Thus section 2128 of the Kentucky Statutes provides that a married woman may make an executory contract to sell or convey or mortgage her real estate if her husband join in it. Under this statute it is held that an executory contract for the sale of a homestead, that is signed by the husband and wife, whether the homestead be owned by the one or the other, is as binding as a like contract for the sale of any other real estate owned by them or either of them. James, et al. v. Jones, et al., 127 S. W., 795. On the other hand, section 1706 of the Kentucky Statutes, referring to homestead exemptions, provides:

"Waiver of—Continuance After Death of Husband. —No mortgage, release or waiver of such exemption shall be valid unless the same be in writing, subscribed by the defendant and his wife, and acknowledged and recorded in the same manner as conveyances of real estate; and such exemption in favor of the execution debtor, or one against whom judgment has been rendered, shall continue after his death for the benefit of his widow and children, or shall be estimated in allotting dower."

Under this section, no mortgage, release or waiver of a homestead exemption is valid unless the same be in writing, subscribed by the defendant and his wife, and acknowledged and recorded in the same manner as conveyances of real estate. Unless, therefore, the mortgage be acknowledged by both husband and wife and recorded or lodged for record, it is ineffectual to convey the homestead right of either. Hensey v. Hensey's Admr., 92 Ky., 164, 17 S. W., 333. In other words, the purpose of section 1706 of the Kentucky Statutes is to save the homestead against coercive sales unless the right thereto be waived in the manner therein provided. The statute, therefore, cannot be disregarded and the mortgagee given an equitable lien when the mortgage itself is invalid.

It remains to determine the validity of the mortgage. The first ground of attack is that the acknowledgment was taken before a notary who was the cashier of and a stockholder in the bank. Whatever may be the rule in other jurisdictions, it is well settled in Kentucky that the fact that a notary is interested in a transaction does

not disqualify him from acting. Thus in Moreland's Assignee v. Citizens' Savings Bank, 97 Ky., 211, it was held that the cashier of and a stockholder in a bank could protest a bill held by the bank; and in the case of Stevenson v. Brasher, 90 Ky., 23, it was held that an acknowledgment of a deed made before a deputy county clerk, who was also the grantee in the deed, was valid. These opinions proceed on the theory that, as to such matters, a notary's acts are purely ministerial and not judicial, and there is no room, therefore, for the application of the rule that a party should not act as judge of his own case. It follows that the acknowledgment was not invalid because of the alleged interest on the part of the notary.

The next ground of attack is that the acknowledgment is invalid because the notary's term of office had expired. In reply to this contention it is alleged in substance that the notary, believing in good faith that his term of office had not expired, continued, in good faith and with the acquiescence of the public, to execute the duties of the office in numerous instances after his term had expired and up to the time the acknowledgment in question was taken. The question presented by this plea is whether or not a notary public may be a *de facto* officer. In the case of Bernier v. Becker, 37 Ohio St., 72, relied on by appellant, the Supreme Court of Ohio held that an act validating the acts of a notary public after his term of office expired was not retroactive in effect. The court further said:

"It is not claimed that the acknowledgment can be supported on the ground that Hiltz, at the time it was taken and certified, was an officer *de facto*. No such color of authority is shown in the record as is required to constitute such an officer."

Clearly, this case cannot be regarded as authority for holding that a notary public cannot be a *de facto* officer. The contention that the notary was a *de facto* officer was not made in that case, and the court, after mentioning the absence of such a claim, merely added that the requisite color of authority to constitute one a *de facto* officer was not shown. On the other hand, it is held in a number of cases that a notary may be an officer *de facto*. Smith v. Bondurant, 74 Ga., 416, 58 Am. Rep., 438; Cary v. State, 76 Ala., 78.

Other courts distinctly recognize the doctrine, but hold that a single act performed by a notary several months after his term of office expired is not sufficient to constitute him an officer *de facto.* Binecourt v. Parker, 27 Tex., 558; Sandlin v. Dowell, 143 Ala., 518, 39 Sou., 279; Hughes v. Long, 119 N. C., 52, 25 S. E. 743.

The whole doctrine is based on the necessity of the thing—the impossibility of one's always knowing whether the notary to whom he goes on business is rightfully in office or has held too long. So where the notary is holding himself out as such and, in good faith, is executing the duties of the office, and the parties, in good faith, go to him to acknowledge an instrument or to have an oath administered, it is better for the public that the act *de facto* stand than that business transactions be upset, or property rights be destroyed because the parties did not know that the notary's term of office had expired perhaps a day or a week before.

Section 3721 of the Kentucky Statutes provides:

"The Governor shall nominate, and by and with the advice and consent of the Senate appoint, as many notaries public as to him may seem necessary, who shall hold their respective offices for the term of four years.

"1. He shall fill vacancies in that office occurring in the recess of the Senate, which appointment shall expire at the end of the next session of the Senate."

As the term of office depends on whether the appointment is made with the advice and consent of the Senate, it is not surprising that this should lead to some confusion and uncertainty, and that a notary who had been appointed during the recess of the Senate to fill a vacancy should honestly believe that his term did not expire for four years. In the case at bar the notary was appointed during the recess of the Senate and his term expired at the end of its next session, which occurred in March, 1908. Thereafter he continued, in good faith, to execute the duties of the office and to take numerous acknowledgments up to the time the deed in question was acknowledged. The Sousleys executed their note and received the consideration. They intended to execute a valid mortgage. All the parties acted in good faith. We, therefore, conclude that if the allegations of the reply be true, the act of the notary was that of a *de facto* officer and the acknowledgment was valid. It follows that the trial court erred in sustaining the de-

murrer to the plea that Wilmott was a *de facto* officer. On the return of the case the court will overrule the demurrer to that paragraph of the reply presenting the plea in question.

Judgment reversed and cause remanded for proceedings consistent with this opinion.