FIRST NATIONAL BANK OF SWEETWATER, et al. v.
W. E. FOWLER, et al.

Eastern Section. April 28, 1928.

Petition for Certiorari denied by Supreme Court, October 6, 1928.

Lee, Price, McDermott & Meek, of Knoxville, for J. L. Boggs, et ux.

Frantz, McConnell & Seymour of Knoxville, and Clark E. Wagoner, of Loudon, for First National Bank of Loudon.

Peace & Sloan and Grayson A. Bailey, of Madisonville, for First National Bank of Sweetwater.

PORTRUM, J. This suit is prosecuted to test the validity of an acknowledgment taken by a Notary Public after her term of office had expired. It is insisted by the general creditors of Fowler Bros. that the acknowledgments of certain deeds of Fowler Bros. are void for this reason and the property conveyed is subject to the claims of the general creditors, a creditor's bill having been filed in the chancery court and the property attached.

An attack is first made upon a deed or deeds from the Fowlers to J. L. Boggs and wife, Ella Fowler Boggs. The consideration for the deeds was $14,900, $11,000 of which was the assumption of a prior mortgage. It is alleged that this conveyance was fraudulent because of the inadequacy of the consideration and also that it was void because the acknowledgment was defective, having been taken by a Notary Public whose term had expired.

It is next insisted that a deed of trust executed by Fowler Bros. to secure a debt of $1648.84, represented by notes payable to the First National Bank of Loudon, is void by reason of the defective acknowledgment.

After the case had been at issue for some time, J. L. Boggs and wife entered a motion to dismiss the attachment against their property for the failure of the plaintiff to prosecute, and this motion was sustained by the court and the attachment dismissed but the parties agreed in case the court found that J. L. Boggs and wife-were guilty of any fraud, then a personal judgment might be entered against them. The Chancellor found as a fact that the consideration for the land was adequate and that the transaction was bona fide, but because of the defective acknowledgment he further held that the deed was

void and ordered the property sold, notwithstanding the attachment had been dissolved which released the property from the attachment lien or lis pendens lien, and for all we know at the time the property was ordered sold, the defective acknowledgment may have been cured by a re-acknowledgment before a de jure Notary. But it is not necessary to dwell upon this question for we are of the opinion that the notary was a de facto officer and her official act was binding so far as the public and innocent parties are concerned.

The notary was a lady named Callie Leslie. She had been commissioned a notary by the county court in 1915 and when her commission expired four years later she was again commissioned in July, 1919; this commission expired in July, 1923, but she continued to function as an officer, at her residence in a rural part of Monroe county, and she took the acknowledgments to the deeds in question in 1924. She continued to act until she learned that her commission had expired when the general creditors' bill was filed in this case in September, 1925. She was under the misapprehension that her term of office was for a term of six years and was acting in entirely good faith at the time the acknowledgments were taken. None of the parties involved knew or had cause to believe she had no authority to take the acknowledgments, or that her office had expired. She continued to act some seventeen or eighteen months after the term had expired and only took about one acknowledgment per month but her acts were not sporadic but were the ordinary acts of the officer filling the office at this place and, therefore, were such as to constitute her in fact a de facto officer if there can be a de facto Notary Public.

The Chancellor was of the opinion that there could be no de facto Notary Public for the reason that his office expired with his commission and in the absence of an office there can be no officer. The Chancellor reasoned as follows:

"Every officer in Tennessee that can take an acknowledgment except a Notary Public has by law a successor, and of course could hold until his successor was appointed or qualified, and after the expiration of his term of office he would be a de facto officer, and in fact an officer de jure until his successor was appointed and qualified, but not so with a Notary Public, the office expires with the term of four years and there can be no officer de facto where there is no office. He is commissioned by the State with a vast amount of authority. He is required to give a bond to protect the public. His commission expires at the end of four years and he no longer has authority to act, his office ceases to exist. The law throws safeguards for the public around a Notary Public. To begin with, he must be elected by the quarterly county court in the county in which he lives. The presumption is that he is known to the members of the court. If as a matter of law he can continue to act after his commission expires, then what protection would the public have? If he can continue to act there is no use

for him to be re-elected. It is possible and probable that a Notary Public might so conduct himself that members of the county court would decline to re-elect him, but if permitted to act after the expiration of his term, he could continue without re-election.''

The learned special Chancellor loses sight of the public interest in his dissertation. And an officer must act in good faith before he can be a de facto officer, so he could not act in disregard of the appointing power. And the public must deal with a de facto officer in good faith. It could not rely upon his acts as legal if it had knowledge that he was acting in disregard of the wishes of the appointing power. The most serious question made by the Chancellor is that the office had expired and there can be no officer without an office. The pertinent provisions of our Code are as follows:

''Shannon's Code, Section 3194. There shall be appointed by the justices of the county court as many Notary Publics for their county as they may deem proper and necessary, to hold their offices for four years.''

''Section 3195. All Notaries shall be commissioned by the governor.''

''Section 3198. Every Notary Public, before entering upon the duties of his office, shall give bond with good securities, in the penalty of $5,000, payable to the State of Tennessee, conditioned for the faithful discharge of said duties.''

''Section 3199. He shall also take and prescribe, before the county court clerk or his deputy, within his county, an oath to support the constitution of this State and the constitution of the United States, and an oath that he will, without favor or partiality, honestly, faithfully and diligently discharge the duties of Notary Public.''

''Section 3201. But the county court may require one of the Notaries to keep his office at the place where any bank may be located in the county out of the county town, or where the convenience or necessity of the people may require it.''

''Section 3202. Every Notary shall, at his own expense, procure a seal of office, which he shall surrender to the county court when he resigns or at the expiration of his term of office, and which his representatives, in case of his death, shall likewise surrender, to be cancelled, on pain of indictment as for a misdemeanor.''

The Chancellor in speaking of the last quoted section says:

''The court is of the opinion the statute making it a misdemeanor for a Notary Public not to turn in or destroy his seal at the expiration of his term of office makes the alleged Notary Public a usurper, holding in his possession his seal as an evidence of authority in violation of law.''

We think the fact that the legislature has penalized the Notary for failure to turn in his seal does not affect his acts as a de facto officer. This is but a safeguard for the public and so is the act of the court

in recognizing the act of an officer done after the expiration of his term of office.

The cases are unanimous in holding that a Notary Public may be a de facto officer. Some of the cases hold that a sporadic act is not the act of a de facto officer, but the question in these cases was a question of fact. All concede that a Notary may be a de facto officer.

The rule as stated in Ruling Case Law, Col. 207, page 330, is:

"A novel position has been taken that since a Notary Public is a public officer he comes within the statute providing that an officer shall hold over until his successor is appointed or until he is removed. The position has also been taken that where he holds office at a particular place, as where he acts for a particular bank, in acting officially after the expiration of his term his acts are valid as those of a de facto Notary. As large numbers of Notaries are appointed at large and not to succeed any particular Notary whose term has expired, in most jurisdictions, it is doubtful whether the first proposition would receive general sanction. The second proposition, however, is not so difficult to maintain. True, there cannot be such a thing as a de facto incumbent of an office that does not exist; but there are such officers as Notaries Public, and if a person holds a commission as one and acts as one, and has the reputation to be one, he is clearly one under the principle of the law of officers de facto, though he does not possess the requisites of a de jure officer." See also Cyc, Vol. 29, page 1075; Am-Eng. Enc. Law, 2nd Ed., Vol. 21, page 577. All of these texts cite the leading case of Smith versus Meador, 74 Georgia, 416, 58 Am. Reports, 439, which was a case involving the question before us. There a Notary Public had taken the acknowledgment of an instrument after his term of office had expired. In the discussion of the case, the court went at length into the history of de facto officers, stating that the courts evolved this doctrine after the revolution in England known as the "War of the Roses", when the king went out of office carrying with him all of his civil officers, and the official acts of these officers after their king had been deposed were held to be acts of de facto officers for the public's convenience. It was held in this case in the first instance that a Notary held over until his successor was elected and was, therefore, a de jure officer, but if he was not, then in the second place, he was a de facto officer and his office did not terminate with his commission. An able dissenting opinion was filed discussing with feeling the question that the office expired with the commission, but this is the only opinion that has been found taking this view. The majority opinion is followed in the case of Penn & Watson v. McGhee, 6 Ga. App., 631. This early Georgia case has been followed in many of the jurisdictions of the American states.

In the case of Davenport v. Davenport, 116 La., 1009, 4 So. 240, it is said:

"But we think it would be an intolerable hardship to require every one who needs the services of a Notary to ascertain first, under pain of nullity, whether he has or not filed his oath or bond with the secretary of state. If the Notary is a Notary de facto it is safe to have recourse with him. The adoption of the doctrine of officers de facto was forced upon the courts by just such situations as that presented in this case. Here is a man dying who sends for the principal Notary of the parish to receive his last will. It would be a strange court that would in such a case annul the will because the Notary had not twenty-five years before filed his oath in the office of the secretary of state or had filed his bond a day or two late."

In the case of Sousley v. Citizens Bank, 168 Ky., 150, it is held where the parties act in good faith, the acknowledgment of a mortgage before a Notary Public whose term has expired but who continued in good faith to hold himself out as such and execute the duties of the office, his acts are valid.

In the case of Sandlin v. Dowell, 143 Ala., 518, 39 So. 279, it is said:

"If the record had shown that, notwithstanding the expiration of the official commission, Herzfeld continued to hold himself out to the public as a Notary Public and to perform official acts as such, and as occasion required, up to the time the acknowledgment was taken, then we think his act in taking the acknowledgment would undoubtedly have been valid as the act of an officer de facto, as the official act of one of reputed authority. It has been so held in the courts of other jurisdictions. Brown v. Lunt, 37 Me., 423; Prescott v. Hayes, 42 N. H., 56; 1 Devlin on Deeds, Section 471."

In the case of Hughes v. Long, 119 N. C., 52, 25 S. E., 743, the court recognized the fact that a Notary Public may be a de facto officer, and it was held that where it appeared the officer was not a de jure officer then it was incumbent upon the party offering the instrument in evidence to show that the officer who took the acknowledgment was in fact a de facto officer.

We have two Tennessee cases decided by the Court of Chancery Appeals, holding that one who had exercised the duties of an office when ineligible was an officer de facto. In these cases a woman was elected and qualified as a Notary Public and later it was held that a woman was ineligible to this office but her acts were recognized as valid on the ground that she was an officer de facto. Since these cases, women have been made eligible to the office of Notary Public. But these cases nevertheless are authority for the proposition that the office of Notary Public can exist without an incumbent and if it can exist in one instance it is reasonable to say that it does in another. The cases referred to are: Stokes v. Acklen, 46 S. W. 316; Third National Bank v. Smith, 47 S. W. 1102. These cases were affirmed by the Supreme Court.

. In discussing the question in the cases cited above the court has taken for granted that the office continued to exist after the commission of the Notary had expired, except the question is discussed in the dissenting opinion referred to in the case of Smith v. Meador, supra. We are constrained to hold that the office does continue to exist. Had the incumbent been recommissioned, it would not have been necessary to recreate the office for in that case the office would continue. The statutes fix no limit to the office and one may be recommissioned any number of times.

For the reasons above stated, we are of the opinion that the Chancellor committed error in declaring the instruments void because of defective acknowledgments and ordering the property sold and the proceeds distributed among general creditors. He should have dismissed the bill so far as the defendants J. L. Boggs and wife, Ella F. Boggs, were concerned, and declared the deed of trust made to C. P. Taliaferro, trustee, to secure the debt of $1648.84 due the First National Bank of Loudon, a first lien on the property described in the instrument, and sold the property subject to the lien, and to this extent the decree is modified and the case is remanded to carry out such other and further orders as are necessary to be made in the general creditors' bill now pending. The complainants in the general creditors' bill will be taxed with the costs of this appeal.

Snodgrass and Thompson, JJ., concur.