STATE OF TENNESSEE ex rel. ROBERT H.
MARQUIS and wife, RUTH B. MARQUIS, Appellees,
v. UNITED STATES FIDELITY & GUARANTY
COMPANY, Appellant.—424 S.W.(2d) 199.

Eastern Section. May 13, 1966.

Certiorari Denied by Supreme Court October 17, 1966.

Hodges, Doughty & Carson, Knoxville, for appellant.

Stone & Bozeman, Knoxville, for appellees.

CARNEY, J.  The court below rendered a judgment against the defendant, United States Fidelity and Guaranty Company, in the amount of $1,323 together with interest of 10% per annum from and after June 19, 1964, for liability on a Notary Public bond as provided by T.C.A. Section 8-1924.  The relators, Mr. Robert H. Marquis and wife, Ruth B. Marquis, were defrauded by one Ben Clarke, d/b/a Ben Clarke Motor Company, when

he sold and delivered to them a 1961 F-85 Oldsmobile sedan at a total price of $1,323. Ben Clarke had no title to the automobile and it was encumbered by a lien for $1,700 in favor of Associates Discount Company. The sale was made on September 3, 1963. Ben Clarke executed a fraudulent bill of sale to said Oldsmobile showing Robert H. Marquis as the purchaser and delivered the bill of sale to Mrs. Ruth B. Marquis. The bill of sale was signed ''Ben Clarke Motor Company, Knoxville, Tennessee, /S/ A. B. Clarke'' seller and bore a notarization as follows: ''Sworn to and subscribed before me this 3rd day of September, 1963. /S/ Ben Clarke, Notary. My Commission expires July 16, 1964.''

Mr. and Mrs. Marquis did not learn until several months later that their title to the Oldsmobile was defective. They were unable to get any satisfaction from Mr. Clarke; he later left Tennessee and entered a sanitarium somewhere in Texas. The Oldsmobile was sold by the finance company at public auction and Mr. Marquis bought it in for a cash price of $1,000. He had already paid $1,323 for the automobile which he did not get back from Ben Clarke. A. B. Clarke and Ben Clarke were one and the same person. Therefore, when he executed the bill of sale, Ben Clarke, as seller, made oath before himself as Notary Public.

The bond sued on in the present case was signed by United States Fidelity & Guaranty Company on April 15, 1963, in the office of the County Court Clerk of Knox County, Tennessee, as surety for Ben Clarke as Notary Public. Ben Clarke never did sign the bond himself as principal, nor was his commission, though signed by the Governor of Tennessee, delivered to him. It remained in the hands of the clerk. His Honor the Circuit Judge, with-

out a jury, found that Ben Clarke was acting as a de facto Notary Public at the time he notarized the bill of sale and that Mr. and Mrs. Marquis sustained their loss as the result of the wrongful act committed by Ben Clarke de facto Notary Public under color of his office. He held that they were entitled to recover on his official bond under the authority of T.C.A. Section 8-1920. United States Fidelity & Guaranty Company has appealed and assigned errors.

By assignments of error I, III, IV and VI the appellant insists that Ben Clarke was neither a de jure Notary Public nor a de facto Notary Public from and after April, 1959. Ben Clarke was elected a Notary Public at the January, 1955, term of the County Court of Knox County. An official Notary bond in the penal sum of $5,000 was executed in his behalf by the United States Fidelity & Guaranty Company as surety. The official bond bore the notation that the commission was dated April 4, 1955. Ben Clarke did not personally sign his official bond and take the oath of office until September 8, 1955.

At the April, 1959, term of the County Court of Knox County, Ben Clarke was again elected a Notary Public upon his application and the United States Fidelity & Guaranty Company again signed his official bond in the amount of $5,000. A commission to Ben Clarke as Notary Public was executed by the Honorable Buford Ellington, Governor of Tennessee, of date April 24, 1959, and forwarded to the County Court Clerk. Ben Clarke never did go by the courthouse to sign his official bond nor formally take the oath of office as Notary Public. The commission was never delivered to him.

In April, 1963, upon his application he was again elected Notary Public by the County Court of Knox

County, Tennessee. The Honorable Frank Clement, Governor of Tennessee, executed a commission to him as Notary Public dated April 18, 1963, which was forwarded by the Governor's office to the County Court Clerk in Knoxville, Tennessee. Ben Clarke never came by the office of the County Court Clerk to sign the official bond nor formally take the oath of office as Notary Public. The commission signed by Governor Clement was never actually delivered to him.

During the period of time from September 8, 1955, through September 3, 1963, when Ben Clarke executed the fraudulent bill of sale involved in this litigation, he performed all the duties of a Notary Public and placed his seal as such on various legal documents, particularly bills of sale and other documents relating to his second-hand automobile business. Appellant insists very strongly that since no commission had been delivered to Ben Clarke since 1955 and since he had not taken the oath of office since that time, he could not possibly be a de jure officer nor a de facto Notary Public.

Appellant points out that under T.C.A. Section 8-1626 it is unlawful for any Notary Public to take acknowledgments or otherwise act in an official capacity after the expiration of his commission. Appellant cites the recent case of Haynes v. State, 213 Tenn. 447, 374 S.W.2d 394, (1964). In that case, in an opinion by Mr. Chief Justice Burnett, it was held that a defendant could not be found guilty of disposing of property covered by a registered mortgage when the acknowledgment on the mortgage was defective on its face. The jurat affirmatively showed that the commission of the Notary Public, before whom the acknowledgment was taken, had expired prior to the date of the purported acknowledgment. The opinion

stated very clearly that a Notary Public whose commission had expired could not be a de jure Notary Public.

However, in the Haynes case Chief Justice Burnett did observe that sometimes a Notary Public may be a de facto officer citing Stokes v. Acklen, 46 S.W. 316 (Tenn.Ch.App. 1898); Third National Bank of Chattanooga v. Smith, 47 S.W. 1102 (Tenn.Ch.App.1898); First National Bank of Sweetwater v. Fowler, 8 Tenn.App. 128, (1928). In the case at bar His Honor the Trial Judge in holding that Ben Clarke was a de facto Notary Public cited and quoted from our Tennessee case of First National Bank of Sweetwater v. Fowler, 8 Tenn.App. 128, and Heard v. Elliot, 116 Tenn. 150, 92 S.W. 764. From the Heard case we quote as follows:

"We adopt as correct the following definition made by Chief Justice Butler in State v. Carroll, 38 Conn. 449, 9 Am. Rep. 409:

'An officer de facto is one whose acts though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised, first, without a known appointment or election, but under such circumstances of reputation or acquiescence as was calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing

body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public unconstitutional law before the same is adjudged to be such.' "

■■ We must remember that Ben Clarke in April, 1963, made application to the County Court of Knox County and was duly re-elected a Notary Public. Pursuant to said election the defendant, United States Fidelity & Guaranty Company appeared in the office of the County Court Clerk of Knox and executed as surety an official bond for Ben Clarke as Notary Public. There being no evidence or contention that the execution of such bond by the surety company was a mistake, we must infer that it was executed at the request of Ben Clarke and that the surety company received its usual and regular compensation for such surety bond. We think His Honor the Trial Judge quite properly found that Ben Clarke did believe that he was legally qualified to act as Notary Public. We concur in the finding of the lower court that Ben Clarke at the time of the execution of the fraudulent bill of sale on September 3, 1963, was a de facto Notary Public. Likewise, we concur in the holding of His Honor the Trial Judge that the liability of a surety on a bond is not contingent upon the signature of the principal. Cambria Coal Co. v. National Surety Co., 141 Tenn. 270, 209 S.W. 641. For these reasons assignments of error I, III, IV and VI are respectfully overruled.

■ Assignments of error II and VIII raise a much more serious question. The appellant insists that the loss sustained by the relators, Mr. and Mrs. Marquis, was solely the result of the fraud practiced by Ben Clarke in

selling and delivering to the plaintiffs an automobile to which he had no title and that the notarization of the bill of sale was not a cause of the plaintiffs' loss. In other words, the appellant insists that if the notarization had been made by a Notary Public entirely disassociated with Ben Clarke Motor Company relators' loss would have been the same. We have been unable to find any Tennessee case closely bearing on this question.

Appellees cite and rely upon the case of Aetna Casualty & Surety Co. v. Commonwealth, (1930) 233 Ky. 142, 25 S.W.2d 51, which is very similar in principle to the case at bar. In that case one Sheffner, a Notary Public and also partner in a real estate business, defrauded an illiterate widow by overcharging her for a farm which his firm had for sale. As part of the consideration the widow executed a deed to a farm she owned and Mr. Sheffner acknowledged her signature as a Notary. The widow brought suit against the surety on Sheffner's Notary bond. The same defense was made as in the present case that the proximate cause of the widow's loss was the fraud of Sheffner as a real estate dealer and not as a Notary Public. From the opinion of the Kentucky Court of Appeals in affirming a judgment against the surety company we quote as follows:

"It is insisted that the surety in the bond of the notary public is not liable because the wrongful act of the officer was not the proximate cause of the loss sustained by the Plaintiff. A notary public is liable on his official bond, for wrongful official acts resulting in loss or injury. It is not necessary that the wrongful act of the notary shall be the sole cause of the loss. If it is a concurring cause and plays a part in bringing about

the injury, the liability for the loss is fixed (citing cases).

"* * * It is argued that the deed was signed by mark in the presence of two witnesses and the fraud could have been perpetrated without the notary's certificate. But that was not the course of conduct followed by the perpetrators of the fraud. The notary public acted officially, attached his certificate to the instrument, and thereby helped to deprive Mrs. Andress of the title to her farm."

T.C.A. Section 8-1920 provides in part as follows:

"8-1920 *Obligations covered by bonds.*—Every official bond executed under this code is obligatory on the principal and sureties thereon—

(3) For the use and benefit of every person who is injured, as well by wrongful act committed under color of his office as by the failure to perform, or by the improper or neglectful performance, of the duties imposed by law. (Code 1858, 771; Shan. 1092, Code 1932, 1833.)"

While it is true that Ben Clarke might have perpetrated his fraud upon Mr. and Mrs. Marquis without a notarization on the bill of sale or by having the document notarized by a disinterested and honest Notary Public, yet the fact remains he did not do so. Instead, he elected to use his de facto office of Notary Public to notarize his own bill of sale to complete his fraud upon Mr. and Mrs. Marquis. Mrs. Marquis testified that she accepted and relied upon the notarization appearing on the bill of sale given her by Ben Clarke as a part of the transaction whereby she purchased from Ben Clarke the Oldsmobile F-85.

We can see no reasonable way to separate the fraud of Ben Clarke as automobile salesman from the fraud of Ben Clarke as Notary Public. He initiated a dishonest transaction when he contracted to sell the Oldsmobile without title thereto. He furthered his fraud when he drafted and signed the bill of sale. He completed the fraud when he notarized the bill of sale and delivered it and the automobile to Mrs. Marquis in exchange for a trade-in worth $600 and a check for $700. The notarization by Ben Clarke was an official act done by him as a part of his fraudulent sale of the automobile and the notarization is inseparable from the remainder of the transaction. While the act of Ben Clarke as a Notary Public was not by any means the sole cause of relators' loss and was not even the major cause of their loss, we agree with the Trial Judge that the notarization of the bill of sale by Ben Clarke was a proximate cause of the loss sustained by Mr. and Mrs. Marquis. Therefore, assignments of error II and VIII must be respectfully overruled.

By assignment of error No. V appellant insists that the notarization was a nullity because a Notary Public may not lawfully notarize an instrument in which he has an interest. 39 Am.Jur. Notary Public, Section 23, page 220. In Tennessee the rule seems to be "that acknowledgments before parties related or interested are voidable, but not ipso facto void; and while such acknowledgments will not per se be declared void, still they are open to attack, and the Court will lend a ready ear to evidence of undue advantage, fraud, or oppression arising out of the fact of such relationship or interest in the officer taking the acknowledgment." Cooper v: Hamilton, etc. B. & L. Association, 97 Tenn. 285, 37 S.W. 12, 33

672

L.R.A. 338 (1896). See also Napier v. Stone, 21 Tenn.App. 626, 114 S.W.2d 57 (1938).

T.C.A. Section 8-1920 allows a recovery on an official bond for injuries sustained by the wrongful act of a public official committed under color of his office. Ben Clarke, in the instant case as a de facto Notary Public was acting under the color of his office. Therefore, assignment of error No. V is respectfully overruled.

Finally, by assignment of error No. VII the appellant insists that his Honor the Trial Judge was in error in awarding the relators a judgment because Mrs. Marquis knew or should have known that the bill of sale was illegally notarized. The evidence fails to bear out this assignment of error. Mrs. Marquis testified that she was in a hurry on the day she purchased the automobile because her son needed the car to drive back to college; that she had never known Mr. Ben Clarke except to do business with him on one occasion in 1959; that after they had reached an agreement as to the price of the car and the value of the trade-in she waited outside the office while he went in and typed up the bill of sale. Further, she testified that she did not know that the signature of A. B. Clarke appearing on behalf of the seller was one and the same person as Ben Clarke, Notary Public. We find no merit in the insistence that Mrs. Marquis knew or should have known that the bill of sale was illegally notarized. Therefore, assignment of error No. VII is respectfully overruled.

All of the assignments of error having been overruled, the judgment of the lower court will be affirmed at the cost of the appellant.

Avery, P.J. (W.S.) and Bejach, J., concur.