# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 2, 2022 Session

## FAMILY TRUST SERVICES LLC ET AL. v. GREEN WISE HOMES LLC ET AL.

### Appeal from the Chancery Court for Davidson County
No. 15-0780-BC          Anne C. Martin, Chancellor

_____

### No. M2021-01350-COA-R3-CV

_____

This appeal involves claims by four plaintiffs against an attorney, his business partner, and the attorney's and partner's limited liability company. The plaintiffs claim that the defendants fraudulently redeemed properties sold via tax sales, utilizing forged or fraudulent documents. Following a bifurcated jury trial, the plaintiffs' claims were dismissed except for the claim of one plaintiff against the attorney defendant, which resulted in a verdict for damages in the amount of $53,450. The trial court subsequently denied a motion for new trial filed by the plaintiffs. The plaintiffs have appealed. Upon thorough review, we conclude that the trial court's denial of the plaintiffs' motion for new trial should be reversed. However, we affirm the trial court's pre-trial determination that judgment on the pleadings was appropriate concerning the plaintiffs' claims of unjust enrichment and "theft" of the right of redemption. We further affirm (1) the trial court's grant of summary judgment in favor of the defendants concerning the plaintiffs' claim based on Tennessee Code Annotated § 66-22-113 and (2) the court's denial of the defendant company's motion to dissolve the lien *lis pendens* on its property. The remaining issue raised by the defendants is pretermitted as moot. We remand this matter to the trial court for a new trial.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Eugene N. Bulso, Jr., and Paul J. Krog, Brentwood, Tennessee, for the appellants, Glenna Ponce Davis, Carl Chambers, Debra Irvin, and Dorothy Booher.

Henry E. Hildebrand, IV, and Denis G. Waldron, Nashville, Tennessee, for the appellees, Green Wise Homes LLC, Charles E. Walker, and Jon Paul Johnson.

**OPINION**

I. Factual and Procedural Background

On June 30, 2015, Family Trust Services, LLC, and Billy Gregory filed a class action complaint in the Davidson County Chancery Court ("trial court"), naming REO Holdings, LLC; Charles E. Walker; Jon Paul Johnson; Julie Coone; and Merdan Ibrahim as defendants. The plaintiffs alleged that the defendants were liable for damages and other relief based on claims of fraud, conspiracy, racketeering, and violations of various statutes for allegedly operating a criminal enterprise in connection with real property tax sales over a period of at least five years. The plaintiffs described this alleged fraudulent activity as follows:

> The Defendants' general modus operandi consists first of identifying, from among properties that have been sold in satisfaction of unpaid real property taxes, properties with absentee owners or owners otherwise unlikely to investigate or assert their interests. Then, if necessary, the Defendants create false instruments, such as affidavits of heirship, that identify certain persons as having interests in the real property in question; the Defendants append forged signatures and notary acknowledgements to these documents. The Defendants then create false deeds, again appending forged signatures and notary acknowledgements. On the basis of these instruments and the pretended title they convey, the Defendants commence redemption processes on the respective properties. In many instances, the Defendants obtain decrees of redemption purporting to vest title to the redeemed properties in them as a result of this course of conduct.
>
> In the course of this process, the Defendants electronically or photostatically copy the signatures and stamps of various notaries public— from Tennessee and other States throughout the Union—from previously recorded instruments and then append these images to the false documents they create to support their redemption claims.

(Paragraph numbering omitted.)

The plaintiffs specifically identified at least eight separate tracts of real property in various Tennessee counties that they alleged had been fraudulently redeemed by the defendants following the properties' respective tax sales. According to the plaintiffs, they sought to bring their action on behalf of themselves and any person who owned an

- 2 -

interest in real property that had been fraudulently redeemed from a tax sale by the defendants and all persons who had purchased property at a tax sale that was subsequently fraudulently redeemed by the defendants. The plaintiffs claimed that the requirements of Tennessee Rule of Civil Procedure 23 were met, including that the plaintiffs were adequate representatives of the class. In support of their claims, the plaintiffs attached copies of the purportedly fraudulent documents. The plaintiffs also sought a temporary injunction preventing the defendants from, *inter alia*, recording any property transfer documents in Tennessee. The trial court issued a temporary injunction to this effect on July 27, 2015.

On August 21, 2015, the defendants, REO Holdings, LLC ("REO"); Charles E. Walker; Jon Paul Johnson; Julie Coone; and Merdan Ibrahim, along with Nationwide Investments, LLC ("Nationwide"), filed a motion to dismiss pursuant to Tennessee Rules of Civil Procedure 9.02 and 12.02(6). These defendants asserted that the plaintiffs lacked standing and that their complaint failed to state a claim upon which relief could be granted.

On October 19, 2015, the plaintiffs, Family Trust Services, LLC; Steven Reigle; Regal Homes Co.; Billy Gregory; and John Sherrod, filed a second amended class action complaint against the defendants, wherein they identified eleven separate tracts of real property that they alleged had been fraudulently redeemed by the defendants. The plaintiffs initiated claims of fraud, slander of title, trespass, ejectment, and civil conspiracy, as well as violations of various statutes, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 66-22-113 (concerning liability of a clerk or officer of the court), and Tennessee Code Annotated § 30-2-712 (concerning affidavits of heirship). The plaintiffs attached several documents in support of their claims.

The defendants filed a supplement to their motion to dismiss, arguing that all claims, except the slander of title and RICO claims by Steven Reigle and the claims of John Sherrod, should be dismissed for lack of standing or for failure to state a claim upon which relief could be granted. Following a grant of permission by the trial court, the plaintiffs filed a third amended class action complaint on November 6, 2015, adding claims of unfair competition, unjust enrichment, intentional interference with business relations, malicious prosecution, and theft of the right of redemption. The plaintiffs also filed a motion seeking to attach certain properties owned by Mr. Walker pending trial.

On January 25, 2016, the defendants filed an additional motion seeking to dismiss certain claims asserted by the plaintiffs in their third amended complaint. The plaintiffs filed a response opposing the defendants' motion. On February 29, 2016, the trial court entered a memorandum and order granting the plaintiffs' motion for prejudgment attachment of Mr. Walker's properties. In doing so, the court found that the plaintiffs had demonstrated the essential elements for acquiring such relief found in Tennessee Code

Annotated § 29-6-101. Mr. Walker and REO subsequently filed federal bankruptcy actions pursuant to Chapter 11 of the United States Bankruptcy Code. The defendants also filed an amended motion to dismiss.

On March 14, 2016, the trial court entered an order staying the claims against Mr. Walker and REO due to the pending bankruptcy proceedings. The other defendants were ordered to file answers to the third amended complaint by April 8, 2016. On April 7, 2016, the trial court entered an order directing the plaintiffs' counsel to prosecute the charge of criminal contempt against Mr. Walker. Thereafter, the non-bankruptcy defendants filed answers to the plaintiffs' claims, and REO filed notice that the action was being removed to the federal bankruptcy court. Because of the removal, on May 17, 2016, the trial court stayed all proceedings in this action.

On January 11, 2018, the plaintiffs filed a motion seeking to dissolve the stay. The plaintiffs reported that while the action was pending in bankruptcy court, they had settled their claims against Mr. Walker, Mr. Johnson, and REO. The plaintiffs stated that their remaining claims had been severed and remanded to the trial court, and they attached an order from the federal bankruptcy court evincing such. Therefore, on February 7, 2018, the trial court entered an order dissolving the stay and reopening the matter for proceedings concerning the remaining claims and defendants, who were determined to be Julie Coone, Nationwide, and Merdan Ibrahim.

On March 29, 2018, the plaintiffs filed a fourth amended class action complaint. Nationwide subsequently filed a motion to dismiss while Ms. Coone and Mr. Ibrahim filed a joint motion to dismiss. The trial court entered an order denying the respective motions to dismiss on July 6, 2018.

On August 31, 2018, the plaintiffs filed a motion seeking to add Carl Chambers as a party plaintiff and to add Charles E. Walker and Jon Paul Johnson as defendants. The plaintiffs alleged that Mr. Chambers was the grandson and lawful heir of a real property owner whose land was fraudulently obtained by Mr. Walker and REO. The plaintiffs attached a revised fourth amended class action complaint, naming Family Trust Services, LLC; Steven Reigle; Regal Homes Co.; Billy Gregory; John Sherrod; and Carl Chambers as plaintiffs and Charles E. Walker, Jon Paul Johnson, Julie Coone, Nationwide Investments LLC, and Merdan Ibrahim as defendants. Mr. Walker subsequently removed the action to the federal bankruptcy court; however, the federal court remanded the action to the trial court on April 1, 2019.

On April 17, 2019, the plaintiffs filed a motion seeking the trial court's permission to file a fourth amended and restated complaint and asking the court to attach Mr. Walker's real property and to lift the stay imposed concerning enforcement of Mr. Walker's criminal contempt sentence. The plaintiffs alleged that in September 2018, Mr. Walker and Mr. Johnson had formed a new limited liability company in Delaware named

Green Wise Homes, LLC ("Green Wise") and that Mr. Walker had transferred fourteen parcels of real property in Davidson County, Tennessee, to Green Wise. Mr. Johnson had likewise transferred two Davidson County parcels of real property to Green Wise. Plaintiffs thus sought to add Green Wise as a party defendant.

On May 1, 2019, at 9:30 a.m., the trial court entered an order reopening the matter, stating that a hearing was scheduled for that afternoon concerning the plaintiffs' motion. However, approximately thirty minutes later, Mr. Walker filed another notice of removal to the federal bankruptcy court. On July 2, 2019, the federal court again remanded the action to the trial court. The plaintiffs subsequently filed a motion in the trial court to reopen the matter, which Mr. Walker opposed. Mr. Walker averred that the bankruptcy court had entered a discharge order with respect to his debts on February 20, 2019, including any debt owed to Mr. Chambers. Mr. Walker further argued that the plaintiffs had agreed to dismiss their claims against Mr. Walker with prejudice in the bankruptcy action. On July 31, 2019, the trial court entered an order reopening the case and granting the plaintiffs permission to file their revised fourth amended complaint. The court also granted permission for Green Wise and Mr. Chambers to be added as parties to the action.

On August 1, 2019, the plaintiffs filed a "Fourth Amended and Restated Class Action Complaint" ("Fourth Amended Complaint") against Green Wise, Mr. Walker, Mr. Johnson, Ms. Coone, Nationwide, and Mr. Ibrahim, again averring claims of fraud, defamation of title, liability pursuant to Tennessee Code Annotated § 66-22-113, unfair competition, unjust enrichment, intentional interference with business relations, malicious prosecution, theft of the right of redemption, theft and trespass on real property, civil conspiracy, and fraudulent transfer of assets. The plaintiffs attached voluminous documents purportedly demonstrating the forgeries and fraud committed by the defendants. Following the filing of answers by some of the defendants, the plaintiffs filed a motion seeking certification of the class, defined as:

> (a) all persons who owned an interest in real property defendants fraudulently redeemed from a tax sale, (b) all persons who purchased at tax sale real property defendants subsequently fraudulently redeemed, or attempted to be redeemed, and (c) all persons who have participated in the market for tax-sale properties in competition with the defendants during the course of the fraudulent enterprise described herein.

On September 30, 2019, Debra A. Irvin sought to intervene as a named plaintiff in the action. Ms. Irvin alleged that she had been defrauded by the defendants and, as a result, had lost over $70,000 in excess proceeds at the tax sale of her real property. Ms. Irvin filed an intervening complaint, wherein she specifically claimed that Ms. Coone, Mr. Walker, and Mr. Johnson had executed forged or fraudulent documents in their scheme to defraud her. On November 7, 2019, the trial court entered an order permitting

Ms. Irvin to intervene. On November 12, 2019, Chancellor Ellen Hobbs Lyle recused herself from presiding in this matter and requested the Chief Justice of the Tennessee Supreme Court to reassign the case to another judge. Chief Justice Bivens subsequently assigned the case to Chancellor Anne C. Martin.

Following the filing of answers to the intervening complaint by certain defendants, the trial court entered an order on January 17, 2020, by which the court scheduled the motion for class certification for further hearing and denied the plaintiffs' motion for prejudgment attachment of properties. Mr. Walker, Mr. Johnson, and Green Wise subsequently filed a motion for judgment on the pleadings, propounding that the plaintiffs could not demonstrate causation.

On April 22, 2020, the trial court entered an order concerning the various pending motions. With regard to the motions to dismiss filed by certain defendants, the trial court dismissed the plaintiffs' claims of unjust enrichment and theft. The trial court also noted that James Brett had been added as a party defendant in the intervening complaint, and the court found that it maintained jurisdiction over Mr. Brett such that the claims against him could proceed.

With reference to class certification, the trial court determined that the plaintiffs had failed to meet the numerosity requirement of Tennessee Rule of Civil Procedure 23. The court further found that Ms. Irvin's claims were not similar to the claims of other putative class members. The court therefore denied class certification, concluding that joinder was an "appropriate and feasible mechanism."

On May 29, 2020, the plaintiffs filed a motion, pursuant to Tennessee Rule of Civil Procedure 19, to join Dorothy Booher and Glenna Davis Ponce as party plaintiffs. The trial court granted joinder of these parties on June 17, 2020. Pursuant to the court's direction, the plaintiffs filed an amended and consolidated complaint on July 10, 2020, adding the claims of Ms. Irvin, Ms. Booher, and Ms. Ponce and omitting the claims that had been previously dismissed.

On October 9, 2020, Mr. Walker, Mr. Johnson, and Green Wise (collectively, "Defendants")[1] requested that the trial court allow voluntary rescission of the transfers of certain real properties from Mr. Walker and Mr. Johnson to Green Wise. They also sought dissolution of liens *lis pendens* filed by certain plaintiffs on those properties. On October 29, 2020, the trial court entered an order denying these motions.

Defendants subsequently filed motions for summary judgment concerning the claims of Ms. Booher, Ms. Ponce, Ms. Irvin, and Mr. Chambers. Nationwide also filed a motion for summary judgment. The plaintiffs filed responses in opposition to these

---

[1] The remaining defendants are not parties to this appeal.

motions. Numerous documents were filed by the parties concerning the summary judgment motions.

On August 2, 2021, the trial court entered an order granting a motion filed by Defendants to bifurcate the trial as to claims asserted against them by Mr. Chambers, Ms. Irvin, Ms. Booher, and Ms. Davis (collectively, "Plaintiffs").[2] On August 6, 2021, the court entered an order concerning the pending summary judgment motions. The court granted summary judgment in favor of Defendants with respect to Mr. Chambers's claim of trespass. The court also granted summary judgment in favor of Defendants with respect to Plaintiffs' claims respecting violation of Tennessee Code Annotated § 66-22-113, the statute that establishes liability for a notary public. Otherwise, the court denied the summary judgment motions.

On August 10, 2021, Defendants filed a motion pursuant to Tennessee Rules of Civil Procedure 54.02 and 59.04, requesting that the trial court revise its ruling denying summary judgment concerning the claims of defamation of title asserted by Mr. Chambers, Ms. Booher, and Ms. Ponce. Defendants asserted that a plaintiff did not have standing to assert a claim of defamation of title when the plaintiff possessed no interest in the property. The court subsequently entered an order denying the motion, determining that these plaintiffs possessed intangible redemption interests.

Following a jury trial conducted on September 13-20, 2021, the trial court entered an order on September 21, 2021, in accordance with the jury verdict forms, finding Mr. Walker liable to Ms. Irvin for damages in the amount of $53,450. All other claims against Defendants were dismissed with prejudice.

On September 27, 2021, Plaintiffs filed a motion for new trial, pursuant to Tennessee Rule of Civil Procedure 59, respecting their claims of fraud, defamation of title, and civil conspiracy. Ms. Irvin also sought a new trial as to her claims for punitive damages. Plaintiffs argued that the evidence presented at trial preponderated against the jury's verdict. The trial court entered an order on October 21, 2021, determining that Plaintiffs had not presented a sufficient basis for the trial court to vacate the jury verdict. The court stated: "No error has been identified and, the Court finds, a reasonable jury could have and did reach a result of no liability on the claims at issue." The court accordingly denied the motion for new trial.

Plaintiffs thereafter sought certification from the trial court pursuant to Tennessee Rule of Civil Procedure 54.02. The trial court entered an agreed order on November 10, 2021, certifying the court's September 21, 2021 order as final. Plaintiffs timely appealed.

---

[2] Although this order does not appear in the appellate record, the trial court's subsequent August 19, 2021 order setting the dates for trial and pre-trial conference refers to the order granting bifurcation.

## II. Issues Presented

Plaintiffs present the following issues for this Court's review, which we have restated slightly:

1. Whether the trial court erred by failing to properly perform its duties as thirteenth juror, thereby requiring a new trial.

2. Whether the trial court erred by dismissing Plaintiffs' claims of unjust enrichment.

3. Whether the trial court erred by failing to recognize a common law claim for intentional interference with the right of redemption.

4. Whether the trial court erred by granting summary judgment in favor of Defendants concerning claims against Mr. Johnson, pursuant to Tennessee Code Annotated § 66-22-113, when Mr. Johnson allegedly notarized certifications used to falsely attest that forged instruments were genuine.

Defendants have raised the following additional issues, which we have also restated slightly:

5. Whether the jury's verdict in favor of Ms. Irvin lacked material evidence to support it.

6. Whether the trial court erred by denying Green Wise's motion to dissolve the lien *lis pendens* recorded against its real property by Mr. Chambers.

## III. Standard of Review

As our Supreme Court has elucidated with regard to review of a jury's verdict:

> Where a party invokes the right to a jury trial, our constitution requires "that the jury be allowed to determine all disputed issues of fact." *Spence v. Allstate Ins. Co*., 883 S.W.2d 586, 594 (Tenn. 1994). The questions of disputed fact to be resolved by the jury include the type and amount of any damages awarded to the plaintiff.

> However, "a verdict of a jury is subject to the supervision of the trial court." *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 144 (Tenn. 1981).

"No verdict is valid until it is approved by the trial court judge." *Davidson v. Lindsey*, 104 S.W.3d 483, 488 (Tenn. 2003) (citing *Cumberland Tel. & Tel. Co. v. Smithwick*, 112 Tenn. 463, 79 S.W. 803, 805 (1904)). In determining whether to approve the jury's verdict, the trial judge acts as a "thirteenth juror":

> "The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside."

*Davidson*, 104 S.W.3d at 488 (quoting *Smithwick*, 79 S.W. at 804). "The purpose of the thirteenth juror rule is to be a 'safeguard . . . against a miscarriage of justice by the jury.'" *State v. Moats*, 906 S.W.2d 431, 434 (Tenn. 1995) (quoting *State v. Johnson*, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting)).

The trial judge must be independently satisfied with the verdict; if the trial judge is dissatisfied with the verdict, the verdict must be set aside. *Holden v. Rannick*, 682 S.W.2d 903, 905 (Tenn. 1984). In addressing a motion for a new trial, the trial court has such broad discretion that it is not bound to give reasons for its action in granting or denying a new trial based on the preponderance of the evidence. *James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613, 615 (Tenn. 1977). Indeed, when a trial judge approves the verdict without comment, the appellate court will presume that the trial judge has adequately performed his function as the thirteenth juror. *Holden*, 682 S.W.2d at 905 (citing *Cent. Truckaway Sys. v. Waltner*, 36 Tenn. App. 202, 253 S.W.2d 985, 991 (1952)).

*Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 308 (Tenn. 2017) (other internal citations omitted). However, if the trial court judge states the reasoning for her decision, "this court looks to [the stated reasons] only for the purpose of determining whether [the

judge] passed upon the issues, and was satisfied or dissatisfied with the verdict thereon." *Holden v. Rannick*, 682 S.W.2d 903, 905 (Tenn. 1984) (quoting *Cumberland Tel. & Tel. Co. v. Smithwick*, 79 S.W. 803, 805 (Tenn. 1904)). "If a trial judge, in discharging his duty as a thirteenth juror, makes comments which indicate that he has misconceived his duty as a thirteenth juror, an appellate court must reverse the trial judge and remand for a new trial." *See Holden*, 682 S.W.2d at 905.

With reference to a trial court's grant of judgment on the pleadings, this Court has previously explained:

> A motion for judgment on the pleadings is provided for by Rule 12.03 of the Tennessee Rules of Civil Procedure. In pertinent part, that Rule provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Tenn. R. Civ. P. 12.03. . . . In reviewing the trial court's ruling on a motion for judgment on the pleadings, "we must accept as true 'all well-pleaded facts and all reasonable inferences drawn therefrom' alleged by the party opposing the motion." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). Importantly, conclusions of law are not admitted. *Id.* (citation omitted). A motion for judgment on the pleadings should not be granted "unless the moving party is clearly entitled to judgment." *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991) (citation omitted). Because the trial court's determination on a Rule 12.03 motion is a question of law, we review the trial court's actions *de novo*, with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

*Ave. Bank v. Guarantee Ins. Co.*, No. M2014-02061-COA-R3-CV, 2015 WL 5838309, at *4 (Tenn. Ct. App. Oct. 6, 2015).

## IV. Chancellor as Thirteenth Juror

Plaintiffs assert that the chancellor erred by failing to properly perform her duties as thirteenth juror. As our Supreme Court elucidated nearly forty years ago:

> The duty of a trial judge to act as a thirteenth juror in a civil trial in Tennessee is well established. The rule was described in *Cumberland Telephone & Telegraph Co. v. Smithwick* as follows:
>
> > "[T]his is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his

- 10 -

> duty to weigh the evidence; and, if he is dissatisfied with the
> verdict of the jury, he should set it aside."

112 Tenn. 463, 469, 79 S.W. 803, 804 (1904).

> Where a trial judge has simply approved the verdict without
> comment, an appellate court will presume that he has adequately performed
> his function as a thirteenth juror. *Central Truckaway System v. Waltner*, 36
> Tenn. App. 202, 217, 253 S.W.2d 985, 991 (1952). If reasons are given,
> "this court looks to them only for the purpose of determining whether he
> passed upon the issues, and was satisfied or dissatisfied with the verdict
> thereon." *Smithwick*, *supra*, 112 Tenn. at 470, 79 S.W. at 805. If a trial
> judge, in discharging his duty as a thirteenth juror, makes comments which
> indicate that he has misconceived his duty as a thirteenth juror, an appellate
> court must reverse the trial judge and remand for a new trial. *See Nashville,
> C. & St. L.R. Co. v. Neely*, 102 Tenn. 700, 52 S.W. 167 (1899).

*Holden*, 682 S.W.2d at 904-05.

In *Holden*, our Supreme Court concluded that this Court had correctly reversed the
trial court's denial of the plaintiff's motion for new trial and remanded the matter for a
new trial. *Id*. In doing so, the High Court reviewed the trial court's comments, made
during the hearing on the motion, to the effect that the trial court "doesn't substitute its
judgment for that of the jury" and "would just as readily have agreed with the verdict the
other way." *Id*. at 905. By reason of these comments, the Supreme Court stated:

> The comments of the trial judge, considered as a whole, indicate that
> he misconceived his duty as a thirteenth juror. Although the trial judge said
> that he agreed with the verdict for the defendant, he indicated that he would
> also have agreed with a verdict for the plaintiff. That position is
> inconsistent with his duty to weigh the evidence and pass on the issues. If a
> trial judge properly weighs the evidence and passes on the issues, he will
> not find that the evidence does not preponderate in favor of the plaintiff
> because the verdict is for the defendant, but would preponderate in favor of
> the plaintiff if the verdict had been for the plaintiff.

> The trial judge stated that he expressly approved the verdict. It
> appears from the context of that statement, however, that he approved the
> verdict because he felt that the case was fairly presented and he was not
> shocked by the verdict, rather than because he reached the same verdict as
> the jury after independently weighing the evidence and passing upon the
> issues. Twice the trial judge stated that the court does not substitute its

- 11 -

judgment for that of the jury. Those statements reveal a mistaken belief on his part that he was under no duty to pass upon the issues.

Because the trial judge stopped short of making an independent decision on the issues presented by the case, and deferred to the judgment of the jury, he failed to perform his duty as a thirteenth juror. The Court of Appeals correctly reversed his decision and remanded the case for a new trial.

*Holden*, 682 S.W.2d at 905-06.

Tennessee appellate courts often have been tasked with analyzing a trial court's comments surrounding the denial of a motion for new trial to discern whether the judge has "misconceived" her duty as thirteenth juror. For example, in *Sherlin v. Roberson*, 551 S.W.2d 700, 700-01 (Tenn. Ct. App. 1976), this Court reviewed the trial court judge's comments announced during the hearing concerning the plaintiff's motion for new trial, including:

I can't say the jury reached the wrong verdict. I can't say that they reached the right verdict. Before I would as a thirteenth juror, before I would set the verdict aside, it would have had to have been a verdict that I couldn't have lived with, and that was not the case in this case. I thought it was a case that could have gone either way, very much so. Most cases are not as close as the questions as in this case that appeared at the time of the trial, and I can't say that I can't agree with what the jury did.

This Court determined that the above-quoted remarks "make it appear [the judge] disassociated himself from the deliberative process which is the peculiar and exclusive province of the jury of which the presiding judge is as much a member as jurors sitting in the jury box." *Id*. at 701. The *Sherlin* Court continued,

To say, as the trial judge did in this case, that before the trial judge, acting as the thirteenth juror, should set aside a verdict it would have to be a verdict that he could not live with would be to adopt a standard relieving the judge of the duty to take an unbiased and dispassionate view of the evidence, weigh it and determine whether the evidence preponderates in favor of the plaintiff or defendant or is equally balanced.

If the trial judge abdicates this important duty justice could often miscarry. On appeal the evidence cannot be weighed as in the trial court. As has been said so often, a verdict in a civil case approved by the trial judge cannot be overturned if there is any credible material evidence to support it. In view of the finality of his determination of the weight of the

evidence as the thirteenth juror, it will not do to weaken the rule by implying approval by the trial judge from countervailing and irreconcilable remarks. To do so would be to strike at the very foundation of our judicial system as it pertains to jury trials.

*Id*.

The above-quoted language from *Sherlin* was later cited with approval by our Supreme Court in *James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613, 615-16 (Tenn. 1977), wherein the High Court was asked to review a trial court's remarks concerning its decisions to initially grant and subsequently reconsider its earlier ruling and deny the plaintiff's motion for new trial. The trial court originally granted the plaintiff a new trial, expressing its disagreement, as thirteenth juror, with the jury's verdict. *Id*. at 614. Following the defendants' filing of a motion to reconsider, the trial court heard oral arguments, subsequently granted the motion to reconsider, reversed its earlier ruling on the motion for new trial, and reinstated the jury's verdict. *Id*. In its written order, the trial court stated:

[T]he Court is of the opinion that its dissatisfaction with the jury's verdict in favor of the defendants was actually a dissatisfaction with the proof as presented by the plaintiff. The Court is of the opinion that there was evidence to support the verdict of the jury in its finding for the defendants and the Court cannot say that the verdict was unreasonable in light of the evidence presented by both sides in this case.

*Id*. at 615.

This Court reversed the trial court's decision in *Jakobik*, and the Supreme Court agreed with that reversal. *Id*. at 616. The High Court observed that "the trial judge affirmatively predicated his ruling upon a finding that there was some evidence to support the verdict" and that "the verdict was not unreasonable." *Id*. As the Court noted, "[t]he clear implication from his remarks is that he did not weigh the evidence and determine whether it preponderated in favor of the plaintiff or defendants or was equally balanced, but merely determined that there was some evidence to support the verdict." As a result, the High Court remanded the matter for a new trial. *Id*.

Similarly, in the case of *Miller v. Doe*, 873 S.W.2d 346, 349 (Tenn. Ct. App. 1993), the trial court judge denied the defendant's motion for new trial, stating during the motion hearing that he was "not inclined to interfere with the verdict of the jury." The judge further posed the rhetorical question, "what makes the judge any smarter than the jury in this case?" The *Miller* Court compared these comments to previous cases wherein an appellate court had reversed a trial court's denial of a motion for new trial because the judge had commented that he or she "rarely invade[d] the province of the jury" or did not

"feel that he ha[d] a right to interfere with the verdict of the jury." *Id*. at 349 (citing *Nashville, C. & St. L.R. Co. v. Neely*, 52 S.W. 167, 168 (Tenn. 1899); *McLaughlin v. Broyles*, 255 S.W.2d 1020, 1022 (Tenn. Ct. App. 1952)). This Court reasoned that the comments articulated by the trial court in *Miller* demonstrated similar deference to the jury rather than indicating that the trial court had "independently weighed the evidence, had passed on the issues presented to the jury, and reached the same verdict as the jury did." *Id*. at 349. The *Miller* Court in turn reversed the trial court's decision and remanded the matter for a new trial. *Id*.[3]

Finally, in *Michelsen v. Stanley*, 893 S.W.2d 941, 945 (Tenn. Ct. App. 1993), the trial court commented during the hearing on the plaintiff's motion for new trial that the "Court is not the judge of the credibility of the witnesses" and that "there was sufficient evidence in the cause to justify the verdict of the jury." The trial court further stated that the "credibility of a witness is peculiarly within the province of the jury" and that the jury "determine[s] the weight, credit, and value to be given to the testimony." *Id*. at 944. The *Michelsen* Court disagreed, elucidating:

> As thirteenth juror, the trial judge's duty is to approve or disapprove of the jury's verdict based on his or her independent evaluation of the evidence. This evaluation includes weighing the evidence. The credibility of a witness's testimony affects the weight attributable to that testimony. The trial judge cannot make an independent evaluation of the evidence without assessing the credibility of witnesses. Therefore, when the trial judge is acting as thirteenth juror, assessing the credibility of witnesses is one of his functions.
>
> While the role of a trial judge in a jury trial is obviously important to the successful conclusion of the trial, his role is more strategically significant in disposing of a motion for a new trial following an unsatisfactory jury verdict. He has certain responsibilities that he must carry out. The proper disposition of a motion for a new trial by the court is essential in order to afford the litigants appellate review.

*Id*. at 945. The *Michelsen* Court accordingly reversed the trial court's judgment and remanded the case for a new trial. *Id*.

---

[3] The *Miller* Court also provided the following guidance, which warrants reiterating here:

> [W]e strongly suggest that when a trial judge overrules a motion for new trial, that he simply state that he has reviewed the evidence relevant to the issues and approves the verdict. Anything more unnecessarily runs the risk of an unwanted new trial.

873 S.W.2d at 349.

- 14 -

In other appeals, this Court has reviewed the trial court's comments and determined that the judge properly performed his or her duty as thirteenth juror. *See In re Estate of Link*, 542 S.W.3d 438, 467-68 (Tenn. Ct. App. 2017) (declining to remand for a new trial when the trial court judge expressed satisfaction with the jury's verdict and found sufficient material evidence to support it); *Washington v. 822 Corp.*, 43 S.W.3d 491, 494-95 (Tenn. Ct. App. 2000) (same); *Shivers v. Ramsey*, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996) (declining to remand for a new trial because the trial court "repeatedly stated that his duty was to weigh the evidence and to determine if it preponderated against the verdict."); *Wells Fargo Bank, N.A. v. Lockett*, No. E2018-00129-COA-R3-CV, 2019 WL 417998, at *4 (Tenn. Ct. App. Feb. 4, 2019) (declining to remand for a new trial because the judge stated that sufficient evidence supported the jury's verdict); *Deatheridge v. Barksdale*, No. M2003-00032-COA-R3-CV, 2003 WL 22999431, at *5 (Tenn. Ct. App. Dec. 23, 2003) (determining that a new trial was not warranted inasmuch as the trial court had made "no comments that could be construed as an inappropriate deferral to the jury's verdict or an unwillingness to invade the province of the jury.").

With these precedents in mind, we now review the chancellor's comments expressed during the motion hearing. Following Plaintiffs' filing of a motion for new trial, the trial court entertained oral argument from the parties' attorneys. During that hearing, the trial court engaged in the following exchange with Plaintiffs' counsel:

COUNSEL: I think we have a case where Mr. Walker and Mr. Johnson are clearly committing perjury with regard to this Kevin Watts, Jose Lorenzo, and certificate of authenticity nonsense that they put in front of the jury. And [] then we have Mr. Walker adding to that when he was committing perjury regarding his suspension from the Board of Professional Responsibility.

So from our perspective, Your Honor, how can a Court be satisfied with a verdict that was obtained, in part, with perjured testimony? We submit it can't.

THE COURT: Well, the first that I ever heard of Mr. Watts and Mr. Lorenzo was at trial. I don't remember that ever coming up in all the dispositive motions. And I wasn't exactly sure where all that was going. And I know you cross-examined on those issues and about the lack of ability to provide contact information. But, you know, I don't know that a jury would have but one conclusion that they didn't exist.

- 15 -

And it's hard sometimes, too, for the Court because, of course, I've heard so much leading up, and you develop impressions and so forth. But the jury is hearing, you know—my job as the 13th juror is only to combine my knowledge to what I heard at trial.

And, you know, I don't know what the conclusion would be about those two. It certainly seems suspect, but I don't know that I could say any reasonable juror would have to assume those two gentlemen don't exist. I don't know. But I understand that's the plaintiffs' position, that that was a shammed up –

COUNSEL:          Sure.

THE COURT:          —story to explain the notary issues.

COUNSEL:          But, I mean, I think that doesn't completely state what the question should be, Your Honor. The question is not whether a reasonable jury would have found that to be perjurious. The question this morning is, does Your Honor believe Mr. Johnson and Mr. Walker's story that certain of these forged instruments were obtained by the deceased Kevin Watts and the fictitious Jose Lorenzo? That's a question for this Court. That's a live question this morning.

And we submit that when the Court weighs the evidence independently, just based on what the Court saw at trial, it's clear[] they were both committing perjury.

And, certainly, Your Honor, with regard to Mr. Walker's testimony that he had the originals of all these documents and that somehow they were just lost or handed back to these fictitious persons, that also is perjurious.

So we had a trial that was infected at numerous stages with perjured testimony. And it's for the Court to make that decision, not to just ask whether a reasonable jury would have believed it or not. This Court is obviously a very reasonable court. And the

- 16 -

Court's obligation under the 13th juror rule, and Rule 59.06 and 59.07, is to weigh this evidence and decide whether the Court believes that these gentlemen committed perjury. And if the Court determines that, yes, they did, how can the Court be satisfied with the result, with a verdict that is based on that kind of perjured testimony? That's why we raised that issue in the memorandum.

THE COURT: Because from an evidentiary standpoint—and you all will recall very well, we—you know, I took a break and looked at it and looked at the sort of prior bad acts and how to put it [] on. And I feel like the evidentiary ruling was right, and it—and it puts—it creates a situation where the question can be asked but the documents can't be put in. And the assumption is that people are going to tell the truth under oath. And that's why it sort of works.

And in this case when Mr. Walker answered the way he did, that's why I had the side bar because I was not confident he was answering—he was answering truthfully.

But, so your position is the fact that he did that—and your argument is on more than one occasion that that in and of itself—or that cumulatively, I guess, should invalidate the jury verdict?

COUNSEL: In our argument, it should cause the Court to be dissatisfied with the jury verdict. Because if this Court makes a decision that Walker and Johnson intentionally testified falsely, how could it be satisfied with a verdict based on that false testimony?

We submit that it's not possible for a court to be satisfied with a verdict that was procured through perjured testimony.

Upon the conclusion of the hearing, the trial court took the matter under advisement, declaring that a written order would be forthcoming. On October 21, 2021, the trial court entered an order concerning the motion for new trial, stating in pertinent part:

- 17 -

Plaintiffs base their motion on their assertion that the evidence presented at trial preponderates and overwhelmingly weighs against the jury verdict. For relief, Plaintiffs ask the Court to act as a Thirteenth Juror and, based upon perjury committed by Defendant Charles Walker, vacate the judgment.

In response, Defendants object to the motion and assert that Plaintiffs were likely unsuccessful because of a defect in their case Defendants have highlighted throughout the case—that they did not suffer damages. Further, that Plaintiffs have identified no error or other basis for their request other than a general dissatisfaction with the verdict.

The Court does not find that Plaintiffs have presented a sufficient basis for it to vacate the jury verdict. No error has been identified and, the Court finds, a reasonable jury could have and did reach a result of no liability on the claims at issue.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiffs' motion for a new trial is DENIED.

Considering the trial court's comments articulated during the motion hearing along with the statements included in its written order denying Plaintiffs' motion for new trial in light of the above-referenced authorities, we conclude that the trial court improperly deferred to the judgment of the jury concerning the credibility of witnesses and the weight to be afforded to the evidence presented. After questioning the truthfulness of Mr. Walker's testimony and whether he might have committed perjury, the chancellor appeared to defer to the jury's decision, relying on the fact that "no error ha[d] been identified" and that the jury had ruled in a "reasonable" manner. Carefully reviewing the trial court's comments as a whole, it does not appear that the trial court had independently assessed the credibility of the witnesses, *see Michelsen*, 893 S.W.2d at 945, or that the trial court had "independently weighed the evidence, had passed on the issues presented to the jury, and reached the same verdict as the jury did." *See Miller*, 873 S.W.2d at 349. Rather, the trial court's comments in the case at bar are akin to those made by the trial court in *Jakobik*, 554 S.W.2d at 615-16, that "there was some evidence to support the verdict" and that "the verdict was not unreasonable."

We further determine this Court's opinion in *Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *7 (Tenn. Ct. App. May 30, 2008), to be instructive concerning this issue. In *Blackburn*, this Court compared and contrasted the federal standard governing motions for new trial with the standard applicable in Tennessee, discerning them to be "quite different." *Id*. As the *Blackburn* Court explained, in contrast to the standard applied in Tennessee, federal courts analyze

whether the jury's verdict was "unreasonable" or against the "clear weight" of the evidence. *Id*. As such, the *Blackburn* Court observed that "under federal law if a reasonable juror could have reached the verdict, the trial court is to defer." *Id*.; *see also Boyd v. BNSF Railway Co.*, 596 S.W.3d 712, 719 (Tenn. Ct. App. 2018). The *Blackburn* Court further recognized that the differences between the federal and Tennessee standards were both "apparent and significant." *Id*.

The *Blackburn* Court's ruling underscores the error in the case at bar. By stating that "a reasonable jury could have and did reach a result of no liability on the claims at issue," the trial court did not sufficiently fulfill its duty as thirteenth juror under Tennessee law. Specifically, the trial court did not confirm that it had independently assessed the credibility of the witnesses and independently weighed the evidence to determine whether it would have reached the same verdict. *See Miller*, 873 S.W.2d at 349; *Michelsen*, 893 S.W.2d at 945. By merely concluding that the jury verdict was reasonable, a trial court does not fulfill its thirteenth-juror duty in Tennessee state courts. *See Jakobik*, 554 S.W.2d at 615-16. Rather, the trial court must determine that it would have "reached the same verdict as the jury after independently weighing the evidence and passing upon the issues." *Holden*, 682 S.W.2d at 905-06.

We emphasize that the trial court's proper fulfillment of its duties as thirteenth juror is necessary to meaningful appellate review of the verdict. As this Court has elucidated:

> On appeal the evidence cannot be weighed as in the trial court. As has been said so often, a verdict in a civil case approved by the trial judge cannot be overturned if there is any credible material evidence to support it. In view of the finality of his determination of the weight of the evidence as the thirteenth juror, it will not do to weaken the rule by implying approval by the trial judge from countervailing and irreconcilable remarks. To do so would be to strike at the very foundation of our judicial system as it pertains to jury trials.

*Sherlin*, 551 S.W.2d at 701; *see Michelsen*, 893 S.W.2d at 945 ("The proper disposition of a motion for a new trial by the court is essential in order to afford the litigants appellate review."). For the foregoing reasons, we conclude that the chancellor's denial of Plaintiffs' motion for new trial should be reversed. We remand this matter to the trial court for a new trial.

## V. Unjust Enrichment

Plaintiffs assert that the trial court erred by dismissing their claims of unjust enrichment prior to trial. We acknowledge that Defendants filed pre-trial motions seeking judgment on the pleadings with respect to certain of Plaintiffs' claims. In its

April 22, 2020 memorandum and order, the trial court granted those motions regarding Plaintiffs' claims of unjust enrichment, concluding that Plaintiffs could not sustain such claims based on the facts alleged in the Fourth Amended Complaint.[4] The trial court found that unjust enrichment claims typically arose when one party provided valuable goods or services to another without an enforceable contract, when there was an expectation of payment that was not fulfilled, and when allowing the receiving party to retain the benefit would be unjust. *See generally In re Estate of Ross*, No. M2013-02218-COA-R3-CV, 2014 WL 2999576, at *3-4 (Tenn. Ct. App. June 30, 2014).[5]

When granting judgment on the pleadings concerning Plaintiffs' unjust enrichment claims, the trial court further relied upon this Court's opinion in *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 217 (Tenn. Ct. App. 2004), stating that a "[q]uasi-contractual theory of recovery . . . is contraindicated when the benefit alleged is involuntarily conferred." Plaintiffs urge, however, that because the *B & L* Court cited no authority for this statement and because other binding precedent suggests that unjust enrichment claims can arise in situations involving the involuntary conferral of a benefit, the trial court erred by relying upon *B & L*. Upon our thorough review, we disagree with Plaintiffs' contentions.

*B & L* involved an action initiated by an employer, B & L, against its former employees, alleging claims of breach of fiduciary duty, violation of covenants not to

---

[4] In their appellate brief, Defendants contend that Plaintiffs have abandoned their unjust enrichment claims by failing to plead such claims in their most recent and, therefore, operative complaint. We note, however, that Plaintiffs' most recent complaint was filed following the trial court's order dismissing certain causes of action, including the claims of unjust enrichment. In such a situation, this Court has previously held that a party maintains the right to appeal those claims that were involuntarily dismissed. *Lemon v. Williamson Cnty. Sch.*, No. M2018-01878-COA-R3-CV, 2019 WL 4598201, at *4 (Tenn. Ct. App. Sept. 23, 2019), *rev'd in part on other grounds*, 618 S.W.3d 1 (Tenn. 2021).

[5] As our Supreme Court recognized more than fifty years ago, actions "brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966). These types of claims require a demonstration of the following elements:

(1) There is no existing, enforceable contract between the parties covering the same subject matter;
(2) The party seeking recovery proves that it provided valuable goods or services;
(3) The party to be charged received the goods or services;
(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001).

- 20 -

compete, conversion, unfair competition, and unjust enrichment after the former employees left their jobs with B & L, began a competing business, and solicited B & L's clients. *Id*. at 189-195. B & L averred that the defendant employees had benefitted from their knowledge of B & L's trade secrets, business techniques, and other confidential information. *Id*. at 197. In support, B & L specifically predicated its unjust enrichment claim on the allegation that the defendant employees had "conferred upon Defendants a benefit and advantage of tremendous and incalculable value, without compensation to [B & L], and therefore Defendants were enriched unjustly, at the expense of [B & L]." *Id*. at 197-98. The trial court granted a judgment in favor of B & L on its unjust enrichment claims, and the employees appealed. *Id*. at 217.

On appeal, the *B & L* Court concluded that the trial court had erred in granting judgment in favor of B & L because, in essence, the benefit obtained by the defendant employees was not willingly conferred by B & L. *Id*. at 217. The *B & L* Court expounded in pertinent part:

> We are unaware of any case applying an unjust enrichment theory of recovery under circumstances similar to those in the case at bar. Quasi-contractual theory of recovery involves the willing conferring of a benefit by one party to the other and is contraindicated when the benefit alleged is involuntarily conferred.

*Id*. This Court accordingly determined that the trial court had erred in awarding a judgment in favor of B & L on its claim for unjust enrichment. *Id*. at 218.

Plaintiffs herein posit that the *B & L* Court's pronouncement that the conferral of a benefit must be voluntary in order to recover for unjust enrichment is "dicta" or has been called into question by other opinions of this Court or our Supreme Court. Upon our thorough review of the authorities relied upon by Plaintiffs, however, we disagree.

For example, Plaintiffs cite our Supreme Court's opinion in *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 516 (Tenn. 2005), wherein the defendant corporations, producers of sorbates used for preserving food products, had pled guilty to price fixing, and the plaintiff was an end-use purchaser of food products containing sorbates. The plaintiff alleged that the defendants should be held liable for, *inter alia*, unjust enrichment, and the defendants moved for summary judgment relative to that claim, arguing that the plaintiff had conferred no direct benefit upon them inasmuch as the plaintiff had purchased the food products from a supermarket. *Id*. at 524-25. On appeal, the *Freeman* Court instructed:

> Freeman may bring a cause of action for unjust enrichment against the defendants even though Freeman did not purchase the items containing sorbates directly from the defendants. The defendants, however, contend

- 21 -

that Freeman must establish that it conferred a direct benefit, rather than an indirect or incidental benefit, upon the defendants. A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss. The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit. In accordance with this underlying principle, we conclude that to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives any benefit from the plaintiff if the defendant's retention of the benefit would be unjust.

*Id*. at 525 (internal citations omitted). Significantly, the query addressed by the *Freeman* Court was whether the benefit received by the defendant must be directly conferred from the plaintiff to the defendant, not whether the benefit was voluntarily or involuntarily conferred.

Similarly, in *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 391 (Tenn. Ct. App. 2014), this Court was not asked to determine whether the conferring of a benefit must be voluntary in order to recover for unjust enrichment. Instead, the *Wells* Court was presented with the question of whether the plaintiff's claims against the defendants concerning their use of the plaintiff's photograph in their advertising campaigns were essentially claims asserting violation of the federal Copyright Act of 1976 and were thus preempted by federal law.[6] *Id*. at 387. The Court determined that all of the plaintiff's claims, including his claim for unjust enrichment, met the subject matter and equivalency requirements of the preemption analysis, such that those claims were preempted. *Id*. at 393. *Wells* contains no discussion of whether a valid claim of unjust enrichment requires that the benefit conferred be voluntary or involuntary.

Likewise, this Court's opinion in *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, 853 (Tenn. Ct. App. 2002), contains no discussion of whether a valid claim of unjust enrichment requires that the benefit conferred be voluntary or involuntary. In fact, the reference to unjust enrichment in *Orlando* and relied upon by Plaintiffs is found within an analysis concerning the appropriate statute of limitations to be applied to a fraudulent conveyance claim and provides no treatment of the law respecting unjust enrichment. *Id*. at 853.

---

[6] The Copyright Act of 1976 is codified at 17 U.S.C. § 301(a).

Plaintiffs further seek to rely on cases involving imposition of constructive trusts. However, Plaintiffs did not allege imposition of a constructive trust in their Fourth Amended Complaint. As such, we conclude that such arguments are waived.

Having determined that the cases cited by Plaintiffs are unavailing with respect to the issue of voluntary conferral of a benefit, we discern no reason to depart from this Court's holding in *B & L*. We therefore affirm the trial court's determination that judgment on the pleadings was appropriate concerning Plaintiffs' claims of unjust enrichment due to the absence of a benefit voluntarily conferred upon Defendants.

### VI. Intentional Interference with the Right of Redemption

Plaintiffs also contend that the trial court erred by declining to recognize a common law action for intentional interference with the right to redeem property following a tax sale. Plaintiffs posit that because the legislature created statutory rights of redemption, the court should have recognized a common law tort cause of action for the intentional intrusion upon or interference with those rights.

In their Fourth Amended Complaint, Plaintiffs alleged a claim of "theft of the right of redemption." In that complaint, Plaintiffs specifically averred:

> The Defendants and their Confederates, by their actions described herein, have intentionally misappropriated rights of redemption in real property rightfully belonging to the Plaintiffs and absent members of the plaintiff classes, in violation of Tennessee Code Annotated Section 39-14-103.

> As a direct and proximate result of this misconduct, the Plaintiffs and the absent members of the plaintiff classes have suffered injuries. This count is asserted for the express purpose of distinguishing previous authority declining to recognize a claim for conversion of intangible property, including *B & L Corp. v. Thomas & Thorngren Inc.*, 917 S.W.2d 674 (Tenn. Ct. App. 1995).

(Paragraph numbering omitted.) We note that Tennessee Code Annotated § 39-14-103 (2018) is a criminal statute concerning theft of property.

Respecting this particular claim, the trial court stated the following in its April 22, 2020 order granting dismissal thereof:

> Defendants assert that there is not a cause of action for theft of an intangible property right, and specifically not for a right of redemption . . . . Plaintiffs rely on a criminal case, *State v. Gentry*, for the proposition that theft of title or ownership through improper means, although of something

- 23 -

intangible, is actionable. 538 S.W.3d 413, 421-27 (Tenn. 2017). In that case, the Tennessee Supreme Court recognized it was appropriate to criminally charge the defendant with theft of real property not because she was an unauthorized squatter, but because she filed documents with the Register of Deeds Office attempting to exclude the rightful property owner of its interest. *Id*. at 427.

Civil cases that have analyzed the tort of conversion have consistently held that it is actionable for the appropriation of *tangible property only* and this Court is aware of no case in which conversion has been recognized as actionable for an intangible property right, including the right of redemption. *See PNC Multifamily Capital v. Bluff City*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). In fact, there are a number of cases applying Tennessee law specifically holding that conversion of intangible property is not recognized in Tennessee. *See B & L Corp.*, 917 S.W.2d at 679-680 (citing *H.J. Inc. v. International Tel. and Tel. Corp.*, 867 F.2d 1531 (8th Cir. 1989) and *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121 (E.D. Va. 1991)); *Intera Co., LTD. v. Dow Corning Corp.*, No. 92-6324, 1994 WL 69582, *4 (6th Cir. Mar. 7, 1994); *Federal Express Corp. v. Accu-Sort Systems, Inc.*, No. 01-2503 Ma/A, 2005 WL 8156707, *20 (W.D. Tenn. Mar. 30, 2005); *Stratienko v. Cordis Corp.*, No. 1:02-CV-005, 2003 WL 23471546, *6 (E.D. Tenn. Dec. 4, 2003); *Ralph v. Pipkin*, 183 S.W.3d 362, 368 (Tenn. Ct. App. 2005); *River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.*, 173 S.W.3d 43, 60 (Tenn. Ct. App. 2002).

The Operative Complaint relies solely on the theft of intangible property, e.g. redemption rights, for its theft claims. This Court does not read the Tennessee Supreme Court's holding in *Gentry* to change Tennessee law regarding the civil claim of theft/conversion, and finds that the law does not support the Plaintiffs' claim in that regard. That claim is therefore dismissed.

Upon thorough review, we agree with the trial court's conclusion concerning this claim.

As the trial court properly concluded, Tennessee has not recognized a civil claim of theft or conversion[7] of the intangible right of redemption. The intentional tort of conversion is defined as "the appropriation of <u>tangible</u> property to a party's own use in exclusion or defiance of the owner's rights." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App.

---

[7] Inasmuch as Plaintiffs' claim in their Fourth Amended Complaint was styled as one for theft, known as conversion in the civil realm, we will address it as such herein.

2012) (emphasis added). In Tennessee, tangible personal property "includes personal property such as goods, chattels, and other articles of value that are capable of manual or physical possession . . . and the value of which is intrinsic to the article itself." Tenn. Code Ann. § 67-5-501(13) (2022) (within chapter respecting property taxes). In other words, tangible personal property "can be seen, felt, weighed and measured." *Corporate Catering, Inc. v. Corporate Catering, LLC*, No. M1997-00230-COA-R3-CV, 2001 WL 266041, at *5 (Tenn. Ct. App. Mar. 20, 2001). By comparison, intangible personal property is defined as including "personal property, such as money, any evidence of debt owed to a taxpayer, any evidence of ownership in a corporation or other business organization having multiple owners, and all other forms of property, the value of which is expressed in terms of what the property represents rather than its own intrinsic worth." Tenn. Code Ann. § 67-5-501(5).

As this Court explained in *Corporate Catering*: "Although many jurisdictions hold otherwise, Tennessee is among the jurisdictions that have declined to recognize a civil cause of action for conversion of intangible personal property." *See* 2001 WL 266041, at *5 (citing *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)); *see also Ralph v. Pipkin*, 183 S.W.3d 362, 368 (Tenn. Ct. App. 2005) (holding that a civil action for conversion is not recognized in Tennessee for the appropriation of intangible personal property); *B & L Corp.*, 917 S.W.2d at 680 (holding that there is no authority in Tennessee for a claim of conversion of intangible property).

In *Corporate Catering*, the plaintiff filed suit against the defendant, seeking damages for conversion and copyright infringement. *See* 2001 WL 266041, at *1-2. The plaintiff alleged, *inter alia*, that the defendant had copied names and descriptions from his catering menu and had used those in her own catering business. *Id.* The trial court directed a verdict dismissing the conversion claim, and this Court affirmed that ruling on appeal. *Id.* at *5. In doing so, this Court reasoned that because the menu names and descriptions were characterized as intellectual property, which is a type of intangible personal property, the tort of conversion would not apply inasmuch as Tennessee had declined to recognize a civil cause of action for conversion of intangible property. *Id.* As this Court elucidated in *Corporate Catering*: "The trial court properly declined to send to the jury a claim that our law does not recognize." *Id.*

Similarly, in this action, the statutory right of redemption is a species of intangible property, *see* Tenn. Code Ann. § 67-5-501, because the right of redemption cannot be "seen, felt, weighed and measured." *Corporate Catering*, 2001 WL 266041, at *5. Given that Tennessee has declined to recognize a claim of conversion regarding intangible property, we conclude that the trial court reached the proper result when it granted judgment on the pleadings concerning Plaintiffs' conversion claim.

## VII. Claim Based on Tennessee Code Annotated § 66-22-113

Finally, Plaintiffs contend that the trial court erred by granting summary judgment in favor of Defendants respecting claims against Mr. Johnson that were predicated on Tennessee Code Annotated § 66-22-113 because, according to Plaintiffs, Mr. Johnson "notarized certifications used to falsely attest that forged instruments were genuine." With reference to this claim, the trial court stated in its August 6, 2021 order:

> [Tennessee Code Annotated § 66-22-113] establishes liability for any *notary public* who fails to comply with and discharge the duties associated with that position. Since none of the REO Defendants acknowledged the documents in this capacity, the Court finds that this statute does not apply. The Court therefore dismisses these claims.

Tennessee Code Annotated § 66-22-101, *et seq.* (2022), governs the requirements for acknowledgment of legal instruments and authentication of signatures through the notary process. Tennessee Code Annotated § 66-22-106 provides in pertinent part that a notary or other officer who takes an acknowledgment should either be personally acquainted with the person acknowledging the instrument or should establish that person's identity by the use of "satisfactory evidence," such as a driver's license, passport, military identification card, or other means of acceptable identification. That statutory section further provides that a notary or other officer "who has taken an acknowledgment pursuant to this section shall be presumed to have operated in accordance with this chapter."

The statutory section under review here, Tennessee Code Annotated § 66-22-113, provides:

> If the clerk or other officer who takes the probate or acknowledgment of a deed or other instrument fails or refuses to comply with and discharge the duties required of the clerk or officer, the clerk or officer shall forfeit and pay the sum of one hundred dollars ($100) for the use of the county in which the clerk or officer resides, which may be recovered by action of debt, in the name of the trustee of the county, in the circuit or chancery court; and the clerk or officer shall, moreover, be liable to the party injured for all damages the clerk or officer may sustain by such failure or refusal, together with costs, to be recovered by action on the case in the circuit or chancery court.

In addition, Tennessee Code Annotated § 66-22-106(e) states that a party "who files an action for damages based on the failure of the officer to establish the proper identity of the person making the acknowledgment shall have the burden of proof in establishing the negligence or misconduct of the officer."

In the instant cause, it is undisputed that Mr. Johnson was a notary public and that he did notarize Mr. Walker's signature on certain documents, which Plaintiffs claim to have been forged or fraudulent. Specifically, Plaintiffs assert that Mr. Johnson notarized Mr. Walker's signature on various "True Copy Certification" pages that were attached to forged/fraudulent documents. Plaintiffs argue that Mr. Walker stated in his deposition that he kept copies of the "True Copy Certification" pages, apparently filled out and notarized in isolation, which he then attached to numerous documents before recording or filing them. Moreover, Plaintiffs urge that because Mr. Johnson notarized the "True Copy Certification" in isolation, without viewing or having knowledge of the document to which it would be attached, Mr. Johnson should be held liable inasmuch as the notary statement recites that Mr. Walker had acknowledged that "this certification of an electronic document is true and correct."

Plaintiffs also point to Mr. Johnson's verification of Mr. Walker's signature on an "Oath of Consideration" appearing on Ms. Irvin's quitclaim deed. They submit that the signature page of this deed was altered after it was signed. Plaintiffs therefore postulate that "based on Mr. Johnson's intimate involvement in the various real-estate ventures undertaken" by REO, his notarization of Mr. Walker's signature on the oath contained on this deed, which facilitated its registration, was accomplished with knowledge that the deed had been altered.

We reiterate that the trial court granted summary judgment in favor of Defendants prior to trial concerning possible violations of Tennessee Code Annotated § 66-22-113. As such, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This Court must therefore "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id*. As our Supreme Court has explained respecting the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered

paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L. Ed. 2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

In this matter, Defendants showed that Mr. Johnson was personally acquainted with Mr. Walker and thus would have satisfied his duties pursuant to the notary statute when notarizing Mr. Walker's signature insofar as Mr. Walker's identity had been established. Therefore, according to Defendants, the fact that Plaintiffs demonstrated that Mr. Johnson notarized Mr. Walker's signature on pages that were attached to documents that Plaintiffs alleged to be fraudulent and/or forged was of no consequence. This issue therefore turns on this Court's interpretation of Tennessee Code Annotated § 66-22-113 and the remaining provisions of Tennessee Code Annotated § 66-22-101, *et seq.*

As our Supreme Court explained more than 100 years ago, although the "functions of a notary public are not to be lightly assumed," the notary's duty is to act in a reasonably prudent manner to "ascertain the acknowledger's identity." *Figuers v. Fly*, 193 S.W. 117, 120 (Tenn. 1917). However, the notary is "not an insurer of the truth of [the acknowledger's] recitals." *Id.*; *see also Peltz v. Peltz*, No. M1999-02299-COA-R3-CV, 2000 WL 1532996, at *2 (Tenn. Ct. App. Oct. 18, 2000). As such, in accordance with the statute, a notary has a duty to "verify the identity of a signor through either personal knowledge or acquaintance with the individual, or examination of an identification document such as a driver's license, passport, or military service ID card, where circumstances exist to cast doubt upon the identity of the signor." *Knighton v. Hayes*, No. W2003-00837-COA-R3-CV, 2004 WL 250903, at *6 (Tenn. Ct. App. Feb. 10, 2004); *see* Tenn. Code Ann. § 66-22-106. Notwithstanding, as this Court has declared, "the cases in Tennessee dealing with a notary's duties generally find only a duty to make sure the person executing a document is the person he/she purports to be." *Battles v. First Union Bank*, No. 01A01-9809-CH-00497, 1999 WL 675126, at *2 (Tenn. Ct. App. Sept. 1, 1999).

Plaintiffs rely upon this Court's opinion in *State ex rel. Marquis v. U.S. Fid. & Guar. Co.*, 424 S.W.2d 199 (Tenn. Ct. App. 1966), in support of their postulate that "where a notary has actual knowledge of the falsity of an instrument, he acts improperly by notarizing an acknowledgment of it." However, in *Marquis*, the notary had notarized his own signature on a fraudulent bill of sale for an automobile. *Id.* at 203. As a result, the *Marquis* Court held that the surety on the notary's official bond was liable for the notary's actions, stating:

> While it is true that Ben Clarke might have perpetrated his fraud upon Mr. and Mrs. Marquis without a notarization on the bill of sale or by having the document notarized by a disinterested and honest Notary Public, yet the fact remains he did not do so. Instead, he elected to use his de facto office of Notary Public to notarize his own bill of sale to complete his fraud upon Mr. and Mrs. Marquis. Mrs. Marquis testified that she accepted and relied upon the notarization appearing on the bill of sale given her by Ben Clarke as a part of the transaction whereby she purchased from Ben Clarke the Oldsmobile F-85.
>
> We can see no reasonable way to separate the fraud of Ben Clarke as automobile salesman from the fraud of Ben Clarke as Notary Public. He initiated a dishonest transaction when he contracted to sell the Oldsmobile without title thereto. He furthered his fraud when he drafted and signed the bill of sale. He completed the fraud when he notarized the bill of sale and delivered it and the automobile to Mrs. Marquis in exchange for a trade-in worth $600 and a check for $700. The notarization by Ben Clarke was an official act done by him as a part of his fraudulent sale of the automobile

- 29 -

and the notarization is inseparable from the remainder of the transaction. While the act of Ben Clarke as a Notary Public was not by any means the sole cause of relators' loss and was not even the major cause of their loss, we agree with the Trial Judge that the notarization of the bill of sale by Ben Clarke was a proximate cause of the loss sustained by Mr. and Mrs. Marquis.

*Id*.

We determine Plaintiffs' reliance on the *Marquis* case to be unavailing. Here, Plaintiffs have shown that Mr. Johnson notarized Mr. Walker's signature on various documents. It is undisputed that Mr. Johnson and Mr. Walker were well acquainted and that Mr. Walker's identity was not unknown or even questionable to Mr. Johnson. Plaintiffs did not demonstrate that Mr. Johnson notarized his own signature on a fraudulent document, as was accomplished in *Marquis*.

We conclude that Plaintiffs' reliance on *In re Crim*, 81 S.W.3d 764 (Tenn. 2002), is similarly misplaced. In *Crim*, the notary executed a certificate of acknowledgment representing that both signees of a deed of trust had "personally appeared" and "acknowledged the execution of the" document. *Id*. at 766-67. However, the document bore the signature of only one signee, who appeared alone and signed for herself and for her husband as purported power of attorney. *Id*. at 766. Because of this, the *Crim* Court determined that the acknowledgment was improper and that the deed of trust was null and void as to subsequent creditors or bona fide purchasers without notice, as concerning the interest of the spouse who did not appear or sign the document. *Id*. at 770. *Crim* did not discuss Tennessee Code Annotated § 66-22-113 or liability of the notary public.

Considering that Defendants demonstrated that Mr. Johnson notarized the signature of a person with whom he was well acquainted and whose identity was not in question, we determine that Defendants affirmatively negated an essential element of Plaintiffs' claim of liability pursuant to Tennessee Code Annotated § 66-22-113. In their responses, Plaintiffs failed to "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in" their favor. *See Rye*, 477 S.W.3d at 265. Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Defendants concerning this claim.[8]

---

[8] Although the trial court granted summary judgment concerning this claim on a different basis, this Court can affirm the trial court even if it reached the correct result for the wrong reason. *See Torres v. Bridgestone/Firestone N. Am. Tire, LLC*, 498 S.W.3d 565, 577 (Tenn. Ct. App. 2016); *Biles v. Roby*, No. W2016-02139-COA-R3-CV, 2017 WL 3447910, at *6, n.3 (Tenn. Ct. App. Aug. 11, 2017).

## VIII.  Remaining Issues

Having addressed the issues presented for review by Plaintiffs, we now turn to the additional issues raised on appeal by Defendants.  The first question concerns whether the trial court erred by denying Green Wise's pre-trial motion to dissolve the lien *lis pendens* entered by the trial court regarding real property that allegedly had nothing to do with Mr. Chambers or the underlying litigation.

The record establishes that Mr. Chambers filed a lien *lis pendens* on August 1, 2019, affecting parcels of real property owned by Green Wise.  In the abstract relative to the lien that Mr. Chambers filed in the trial court, he reported that he sought to secure payment of any damages awarded to him in this action.  Mr. Chambers further asserted in the lien abstract that Mr. Walker and Mr. Johnson had fraudulently transferred the parcels of property to Green Wise in order to avoid paying damages to Mr. Chambers.

In response, Green Wise filed a motion the following day seeking to have the lien dissolved.  For support, Green Wise urged that because the real property that was subject to the lien was not related to the underlying litigation, the lien could not stand.  Green Wise argued that Mr. Chambers had attempted to "unlawfully use the lien lis pendens as a prejudgment attachment."  Mr. Chambers filed a response, stating in pertinent part:

> The Fourth Amended Complaint seeks to set aside the fraudulent conveyance of the real property described in paragraph 314 of the Complaint.  Because the Complaint seeks to set aside the transfer of the real property described in paragraph 314 of the Fourth Amended Complaint as fraudulent, Section 20-3-101 permits plaintiffs to file a lien *lis pendens* as to such property.

On August 15, 2019, the trial court entered an order concerning Green Wise's motion, providing in relevant portion:

> The text of Tenn. Code Ann. § 20-3-101 is explicit.  Section 20-3-101 on its face provides "When any person . . . seeks to fix a lien lis pendens on real estate . . . in furtherance of the setting aside of a fraudulent conveyance . . . that person shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to the suit, a description of the real estate affected, its ownership and a brief statement of the nature and amount of the lien sought to be fixed."  Plaintiff Carl Chambers seeks in this action to set aside as fraudulent the transfer of the fifteen parcels of real property described in paragraph 314 of the Fourth Amended Complaint.  The claims for fraudulent transfer he asserts in the Fourth Amended Complaint fit within the language of Section

20-3-101. Plaintiff's claims for fraudulent transfer provide a sufficient link for the filing of the lien *lis pendens* pursuant to Section 20-3-101.

A second basis for the Court's ruling is that the Plaintiff has filed a lien *lis pendens* only as to the fifteen parcels of real property alleged in paragraph 314 of the Fourth Amended Complaint to have been fraudulently transferred. The Plaintiff has separately sought a prejudgment attachment with respect to six (6) other parcels of real property that defendant Charles E. Walker continues to own. Those parcels are distinct from the 15 parcels as to which plaintiff has filed the lien *lis pendens*. Plaintiff's request for a prejudgment attachment of those parcels will be resolved in accordance with this Court's Order filed July 31, 2019. Because Plaintiff has only filed a lien *lis pendens* as to the real property that is the subject of the fraudulent transfer claim asserted in the Fourth Amended Complaint, the lien *lis pendens* complies with Section 20-3-101.

Green Wise Homes, LLC argues that there is a difference between a fraudulent transfer and a fraudulent conveyance. The Court finds, however, that the fraud claims Plaintiff Carl Chambers asserts in the Fourth Amended Complaint fit squarely within the language of Section 20-3-101, and provide a sufficient link for the filing of the lien *lis pendens*.

The Motion to Dissolve Lien Lis Pendens is accordingly DENIED.

(Paragraph numbering omitted.)

Defendants also posit that the trial court erred by failing to dissolve the lien because the properties to which the lien applied were neither connected to Mr. Chambers nor the underlying litigation. As this Court determined in *Boyd v. Green Farmers Co-op., Inc.*, No. C.A. 142, 1990 WL 198249, at *3 (Tenn. Ct. App. Dec. 11, 1990):

The defendants in this action had no underlying claim or interest, legal or equitable, in and to the realty upon which they sought to impose a lien lis pendens, asserted none in their complaint, and further, the realty was not the subject-matter of the suit. Under these circumstances, as at common law, a lien lis pendens was inappropriate and unavailable for the defendants' intended purposes and did not attach to the realty in question.

Reviewing the allegations contained in the Fourth Amended Complaint, however, it appears that Plaintiffs did claim that Mr. Walker and Mr. Johnson had fraudulently transferred certain parcels of real property owned by them to Green Wise in order to "hinder, delay, and defraud plaintiff and other creditors in the collection of amounts owed to them," in violation of Tennessee Code Annotated § 66-3-305 (part of the Uniform

Fraudulent Transfers Act).  Plaintiffs further asserted that under Tennessee Code Annotated § 66-3-308, the trial court could avoid the transfers to the extent necessary to satisfy Plaintiffs' claims.  Moreover, Plaintiffs propounded that pursuant to Tennessee Code Annotated § 66-3-309, the court could issue a judgment against each defendant for the value of the asset transferred or the amount necessary to satisfy Plaintiffs' claims, whichever is less.  We note that the parcels enumerated in the Fourth Amended Complaint as having been allegedly fraudulently transferred to Green Wise are the same parcels that are referenced in the lien *lis pendens* abstract.

Tennessee Code Annotated § 66-3-305 (2022) provides in pertinent part:

(a)     A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

  (1)     With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

The statute further provides that one of the factors that may be considered in determining "actual intent" is whether the debtor retained possession or control of the property transferred after the transfer.  *See* Tenn. Code Ann. § 66-3-305(b)(2).  Furthermore, Tennessee Code Annotated § 66-3-308 (2022) does allow a fraudulent transfer of property to be voided by the creditor "to the extent necessary to satisfy the creditor's claim."

Upon review of the Fourth Amended Complaint, we conclude that Plaintiffs properly stated a claim of fraudulent transfer with respect to the real properties referenced therein.  Because the lien *lis pendens* was filed concerning these same properties, we further conclude that the trial court did not err by refusing to dissolve the lien until the litigation was finally concluded.  We acknowledge that such timeframe would include the remand following this appeal.  *See, e.g.*, *Oliver v. Upton*, No. 01A01-9705-CH-00197, 1998 WL 151388, at *5 (Tenn. Ct. App. Apr. 3, 1998) (holding that a lien *lis pendens* terminates upon the conclusion of the underlying lawsuit); *Figlio v. Shelley Ford, Inc.*, No. 88-15-II, 1988 WL 63497, at *4 (Tenn. Ct. App. June 22, 1988) (explaining that the "suit out of which the original *lis pendens* arose did 'finally' terminate when the plaintiff did not appeal").

Finally, Defendants argue that Ms. Irvin presented no material evidence to support the jury's finding that Mr. Walker should be held liable to Ms. Irvin for misrepresentation by concealment and the jury's award of monetary damages for that claim.  However, inasmuch as we have determined that this action must be remanded to the trial court for a new trial, we conclude that this issue is pretermitted as moot.

## IX.  Conclusion

For the foregoing reasons, we reverse the trial court's denial of Plaintiffs' motion for new trial.  However, we affirm the trial court's determination that judgment on the pleadings was appropriate concerning Plaintiffs' claims of unjust enrichment and "theft" of the right of redemption.  We further affirm the trial court's grant of summary judgment in favor of Defendants concerning Plaintiffs' claim based on Tennessee Code Annotated § 66-22-113 and the court's denial of Green Wise's motion to dissolve the lien *lis pendens* on its property.  Defendants' remaining issue is pretermitted as moot.  We remand this matter to the trial court for a new trial consistent with this Opinion.  Costs on appeal are assessed to the appellees, Green Wise Homes LLC, Charles E. Walker, and Jon Paul Johnson.


s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE